### ANNE G. PADDOCK
### v.
### EUGENE C. BATES, Assignee, etc.

1. ASSIGNMENT—COLLATERAL SECURITY DOES NOT AFFECT DIVIDENDS.— In a voluntary assignment for benefit of creditors under the statute, where one claimant holds collateral security, but not sufficient to satisfy his entire debt, dividends should be allowed to such claimant on his whole claim, and not merely upon the residue only, after deducting the value of the security held.

2. SAME—ASSIGNEE MORE THAN A MERE VOLUNTEER.—While the assignee is a mere volunteer in respect to the property rights acquired from the assignor, yet he is something more than a mere representative of the assignor, in respect to the distribution of the assets of the insolvent estate.

APPEAL from the Circuit Court of Bureau county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed June 8, 1886.

July 2, 1883, the firm of Sower Brothers, of Princeton, Illinois, executed their promissory notes to appellant, Anne G. Paddock, and secured the same by their trust deed of even date therewith, on their mill property in Princeton.

April 26, 1884, said Sower Bros. being insolvent, executed their deed of assignment of all their property to Eugene C. Bates, for the benefit of all their creditors, and mentioned appellant's claim at $1,000 in the list of creditors attached to said deed of assignment.

May 15, 1884, said assignee notified all creditors of said firm to present their claims within three months thereafter.

August 14, 1884, said Anne G. Paddock proved and presented her claim for $1,017, under oath, to said assignee, being the balance owing her upon said notes.

August 18, 1884, said assignee filed with the clerk of the county court a list under oath of all such creditors as had proven and presented their claims to him, which list included the claim of appellant for $996.08 and interest thereon from April, 26, 1884, at seven per cent., and a statement that said claim was secured by said trust deed; and no person interested as creditor or otherwise within thirty days thereafter, made any objection or filed any exception to appellant's claim, as the same was proven, presented and reported.

December 30, 1884, appellant's claim amounted to $1,043.33, and the value of the property securing the same by said trust deed was only $765.75 (the mill having been destroyed by fire).

December 30, 1884, said assignee made a report to the county court, and therein prayed for an order of distribution of thirty per cent. among the creditors, except to appellant, and asked for an order to pay to her thirty per cent. on the excess of her claim over and above said $765.75, and to hold in his own hands thirty per cent. on said $765.75, until her rights in the mortgaged property should be determined and realized upon.

Anne G. Paddock and her trustee, prior to and at the hearing of said cause, offered to surrender or assign her claim and her security to said assignee and the other creditors of said insolvent estate on payment in full of her claim as proven, presented and reported; or if preferred, to release her claim and said trust deed to said assignee or creditors, or to both, on such payment being made to her, and such offers were refused.

At the hearing appellant moved for a dividend upon the full amount of her claim as proven, presented and reported.

The court overruled appellant's said motion and granted said prayer of said assignee, and ordered such distribution as prayed by said assignee.

Anne G. Paddock appealed, and the cause was heard by the

circuit court upon an agreed state of facts substantially as afore-said, and upon said report and said prayer therein, and upon the motion of appellant in said circuit court for a dividend of thirty per cent. on the full amount of her said claim as afore-said.

The decree of the circuit court was substantially the same as the order that had been entered in the county court.

Messrs. SKINNER BROTHERS and Messrs. KENDALL & LOVEJOY, for appellant; cited Morrison v. Kurtz, 15 Ill. 193; Evertson v. Booth, 19 Johnson, 486; Brinkerhoff v. Marvin, 5 Johnson's Ch. 320; Woolcocks v. Hart, 1 Paige Ch. 185; Morris v. Olevine, 22 Penn. 44; Brown v. Cozard, 68 Ill. 178: Findley v. Hosmer, 2 Conn. 330; West v. Bk. of Rutland, 19 Vt. 403; Graeff's Appeal, 79 Penn. 146.

An assignee, under a voluntary assignment for the benefit of creditors, does not represent the creditors, but is the exclusive representative of the assignor: Hawks v. Pritzloff, 51 Wis. 162; Easterbrook v. Mississmitt, 18 Wis. 551; Heinricks v. Woods, 7 Mo. Ap. 236; Morris' Appeal, 88 Penn. St. 382.

Messrs. ECKELS & KYLE, for appellee; that the general principle is that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, cited 1 Story Eq. Jurisprudence, Sec. 633; Wise v. Shepherd, 13 Ill. 41; Hurd v. Eaton, 28 Ill. 122; Marshall v. Moore, 36 Ill. 321; Morrison v. Kurtz, 15 Ill. 193; Doyle v. Murphy, 22 Ill. 502; Sweet v. Redhead, 76 Ill. 374; Rogers v. Meyers, 68 Ill. 92; Hords v. Burton, 79 Ill. 508.

BAKER, J. The claim of appellant was duly established in the county court as a valid claim against the estate of the insolvents. The main question at issue in this litigation is whether, the value of the collateral security held by her being insufficient to pay her debt in full, the dividends to be

Paddock v. Bates.

paid her out of the general assets in the hands of the assignee should be upon the basis of the whole of her claim, or upon the basis of the unsecured excess of her claim.

The ground taken by appellee is, that the rule in equity requires that if one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, then the former should be compelled to resort to the fund upon which only he has a lien or in which only he has an interest, in the first instance, for satisfaction; and that the true doctrine is that when a debtor has made an assignment for the benefit of creditors, a creditor having a special security should be required to first exhaust such security, and should receive a dividend only upon the unsatisfied or unsecured portion of his debt. The ground taken by appellant is, that there will be no marshaling of assets, and this rule in equity will not be enforced when it trenches upon the rights, or operates to the prejudice of the party entitled to the double fund ; and that the orders of distribution made by the county and circuit courts do trench upon her rights and operate to her prejudice.

Upon the particular point in controversy, as to whether the dividend paid to appellant, her security not being sufficient to satisfy her entire debt, should be a *pro rata* dividend on the whole amount of her claim, or upon the residue only after deducting the value of the security held, the authorities are in conflict, and a plausible reason can be given for either view. We think the weight of authority is in favor of the proposition that the dividend should be allowed on the whole claim, and that seems to be in accordance with the doctrine as held in th's State. Morrison v. Kurtz et al., 15 Ill. 193, was a case analogous to this. There Morrison held a debt against a copartnership, which was secured by a deed of trust on real estate belonging to one of the firm in his own right ; and the circuit court decreed that he should first exhaust the real estate, and that if after having exhausted the real estate there should be a balance unpaid against the firm, he was to become a general creditor in respect to the assets of the firm and be paid in the same manner with the other credit-

ors to the extent of said balance, and that money should be retained by the commissioner sufficient to pay any deficiency of the claim of Morrison, which might exist after the sale of the real estate on which he held the deed of trust. The decree was reversed, and in their opinion the court referred to the fact that the firm was insolvent and said: "While a court of equity has an undoubted authority to compel one creditor to satisfy his debt out of a particular fund to which he alone can resort, yet it will never do this to the injury of such creditor, or where that course will work injustice to other parties. * * * We think Morrison has a right to insist upon his distributive share of the cash raised from the sale of the property as a creditor of the firm. As a creditor of the firm he has the same abstract right to the proceeds of the sale as the other creditors. He is as meritorious in every respect as they; and because he was more vigilant or cautious in requiring security, it is no reason why he should be put in a worse condition than the other creditors, by having his debt postponed and his payment delayed till by a proper proceeding he can realize out of the property upon which his debt is secured; while the other creditors are paid in cash." See also, Brown v. Cozard, 68 Ill. 178, and Sweet et al. v. Redhead, 76 Id. 374.

Section six of the Voluntary Assignment Act provides that the court shall order the assignee or assignees to make, from time to time, fair and equal dividends among the creditors of the assets in his or their hands, in proportion to their claims; and section thirteen provides that all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof. It is an adjudicated fact that the claim of appellant is a debt and liability within the provisions of the assignment that was made by Sower Brothers, and she has a statutory right to have and receive a *pro rata* share from the assets of the assignment. In respect to the real estate covered by the trust deed, the only property or right therein that was included in the assets of the assignment was the equity of redemption that was vested in Sower Brothers; and the residue of the property therein belonged

to appellant.   There is no pretense she has been paid any portion of her claim; it is still, in its entirety, a debt against the assignors, upon which they might be sued and a personal judgment against them recovered.   If she does not get her distributive share on the full amount of her claim, how can it be said that the assets of the assignment have been paid *pro rata* upon all the existing indebtedness?   How can it be said that the order entered by the court directs an equal dividend of the assets in the hands of the assignee among the creditors in proportion to their claims?   As a creditor whose claim has been established in conformity with the requirements of the statute, appellant has the same right to her *pro rata* share of the assets ready for distribution that the other creditors have to their *pro rata* shares.   It is true she is the beneficiary in a trust deed given to secure her debt, but she is also a creditor of the assignors ; in the one capacity she has the right to look to her security for the collection of her debt, and in the other capacity she has the right to look to the assets that were covered by the assignment, and her two remedies are concurrent.   Of course she can have but one satisfaction of her debt; and if the mortgaged premises should at any time produce more than is sufficient for the payment of her claim, such surplus would go to the benefit of the other creditors.   And it will be noticed that prior to and at the time of the hearing appellant offered to do all that equity would require of her—that is, to surrender her special security upon full payment of her claim.   The order that was made by the court marshaling the assets trenches upon the rights of appellant, and operates to her prejudice and injury.   She has the right to equal dividends in proportion to her claim with the other creditors, out of the assets to be distributed, and to have such dividends paid when theirs are paid.   But, by the order entered, the other creditors received thirty per cent. upon their entire claims in cash, while she received thirty per cent. in cash upon but a fraction of her claim, while the thirty per cent. upon the residue of $765.75 was ordered to be retained by the assignee for an indefinite period.   The delay in the use and enjoyment of this dividend on the $765.75 and the

doubt there is about her ever getting it under the order as made, both operate to her injury. She has a right, as a *cestui que trust* under the assignment, and as a creditor under the statute, to be paid dividends equal, *pro rata*, with those paid the other creditors; and then has a right under her trust deed, to make the residue of her debt out of the property that was, prior to the assignment, pledged as security for her debt, thereby being enabled to collect the full amount of her claim. But by the rule announced in the order of the court, the special fund being admittedly insufficient to pay her whole debt, and her debtors being insolvent, and their property including the special fund, insufficient to pay all the claims against it, it necessarily follows that she will lose a part of her claim, since she will receive upon the excess of her claim, over and above the $765.75, only the same dividends that the other creditors of the insolvent estate receive. This is in derogation of the rights she has under the deed of assignment, the statute, and the contract she was provident enough to make for the security of her debt; and that it would operate to her detriment and prejudice is manifest.

The other point made by appellant, that the rule in equity with reference to the marshaling of assets will only be applied at the instance of another creditor and never enforced upon the suggestion of the debtor, and the assignee under a voluntary assignment takes as a mere volunteer, stands in the shoes of the assignor, and can assert no right or claim that he could not assert, and that therefore it was error to enforce the rule in equity that we have considered at the instance and upon the motion of the assignee, when the debtors themselves, had there been no assignment, could not have asked it in respect to appellant, a creditor, we do not regard as of much force. While the assignee is a mere volunteer in respect to the property rights acquired from the assignor, yet, in view of the provisions and requirements of the statute now in force, he is something more than a mere representative of the assignor, in respect to the distribution of the assets of insolvent estate. Besides this, it was the duty of the county court, under the statute, either with or without suggestion from the

assignee or any one else, to make a proper order of distribution.

For the error indicated herein, the order and decree of the court is reversed and the cause remanded, with instructions to enter an order of distribution in conformity with this opinion.

Reversed and remanded.