### HUFF et al. v. BIDWELL et al.

### MAYOR AND COUNCIL OF CITY OF MACON et al. v. HUFF et al.

(Circuit Court of Appeals, Fifth Circuit. October 27, 1914.)

#### No. 2533.

1. INSOLVENCY (§ 188*)—DISTRIBUTION OF ESTATE—COUNSEL FEES.

A court of equity has power to allow a fee to the solicitor of an insolvent defendant, whose estate is being administered, to be paid from the fund in court; but, if it appears on final distribution that the assets are sufficient to pay all debts and leave a surplus, it is not the province of the court either to fix the fee or to charge it upon the fund.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 309; Dec. Dig. § 188.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. INSOLVENCY (§ 109*)—DISTRIBUTION OF ESTATE—INTEREST.

The rule that, in the administration of insolvent estates, interest is not allowed after the commencement of the proceedings, applies only as between creditors who stand upon an equal basis, and not to a creditor having a prior lien on specific property in favor of unsecured creditors, nor where the estate proves sufficient to pay all creditors, with interest.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 173; Dec. Dig. § 109.*]

3. INSOLVENCY (§ 185*)—INVOLUNTARY PROCEEDINGS—COSTS.

Where a temporary receiver was improvidently appointed in a proceeding in insolvency against the defendant, the costs of the receivership are properly taxable against the complainants who procured it.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 306; Dec. Dig. § 185.*]

4. INSOLVENCY (§ 185*)—DISTRIBUTION OF ESTATE—COSTS OF COLLATERAL LITIGATION.

Complainants in proceedings in insolvency against a debtor were justified in resisting payment of paving assessments against property of the defendant, where their validity was doubtful, and are not personally liable for the costs of such litigation, although they were unsuccessful; nor are they personally liable for such assessments because of a tender made by them, and not accepted, which was presumably made on behalf of the estate.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 306; Dec. Dig. § 185.*]

5. INSOLVENCY (§ 185*)—ADMINISTRATION OF ESTATE—CLAIMS FOR TAXES.

County and municipal taxes, assessed upon property being administered by a court in insolvency proceedings against the owner, are a part of the costs of administration, and cannot be required to contribute to the payment of solicitors' fees awarded the complainants, but are entitled to payment in full, with interest.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 306; Dec. Dig. § 185.*]

6. INSOLVENCY (§ 188*)—DISTRIBUTION OF ESTATE—COSTS AND EXPENSES.

Where a mortgagee, made a defendant in insolvency proceedings against the mortgagor, adopts such proceedings for the purpose of enforcing its lien, it may properly be required to contribute to the payment of a solicitor's fee awarded to the complainants from the fund in court.

[Ed. Note.—For other cases, see Insolvency, Cent. Dig. § 309; Dec. Dig. § 188.*]

Appeals from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Suit in equity by William L. Bidwell and others against William A. Huff and others. From the decree defendants, as well as the Mayor and Council of the City of Macon and the County of Bibb, as interveners, separately appeal. Reversed in part.

See, also, 151 Fed. 563, 81 C. C. A. 43; 176 Fed. 174.

Du Pont Guerry and Thos. S. Felder, all of Macon, Ga., for appellants Huff and others.

Walter G. Smith, Andrew W. Lane, N. E. Harris, Walter A. Harris, T. E. Ryals, R. L. Anderson, Alexander Akerman, and J. E. Hall, all of Macon, Ga., opposed.

Before PARDEE, Circuit Judge, and CALL and GRUBB, District Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GRUBB, District Judge. This is the fifth appeal in this case. The cause now comes before the court upon the appeal of a number of the parties from the decree of the court below distributing the proceeds of the various sales of the properties in the possession of the receiver, some made by consent of the parties, and some under the former decree of the court below, which was affirmed by this court upon a former appeal. The various appellants are the defendants, W. A. Huff, individually and as trustee for his children, Edison Huff and Mrs. Jennings, also Edison Huff and Mrs. Jennings, individually, the mayor and council of the city of Macon, the county of Bibb and its tax collectors, and the Scottish-American Mortgage Company, Limited. The grievances complained of by each appellant are different.

The defendants, W. A. Huff, Edison Huff, and Mrs. Jennings, present the following objections to the decree: (1) The defendant W. A. Huff complains of the allowance by the court below of a solicitor's fee to his former solicitor, Alexander Proudfit, out of the surplus, if any, coming to defendant W. A. Huff. (2) They all complain of the allowance by the court below of interest on the claims of the plaintiff, and the claims of the various interveners, including the claims for taxes and assessments. (3) They all complain that the decree failed to tax the costs of the temporary receivership against the plaintiffs, as directed by the opinion of this court on a former appeal. (4) They all complain that the costs accruing upon the contested paving assessment of the city of Macon were not taxed against the plaintiffs, wholly or partly. (5) They all complain that the plaintiffs were not required to pay the paving assessment, and not the fund, by reason of the tender made by plaintiffs upon the hearing of one of the former appeals in this court. (6) They all complain that the property known as the Armory property was not turned over to them, its sale having been determined not to be necessary to pay the defendant's debts. (7) The defendants Edison Huff and Mrs. Jennings complain that they were not accorded a hearing before the master or the court, in the court below, upon their claim to a seventh interest each in the proceeds of the sale of certain of the tracts of land sold under the former decree, and of a like interest in certain of the rents alleged to have been collected by the receivers from certain of the properties in their possession, in which the defendants Edison Huff and Mrs. Jennings each claimed an undivided interest.

The appellant the mayor and council of the city of Macon complains of the decree because by its terms the city was taxed with a proportionate part of the solicitor's fee allowed the plaintiffs by the court below, and because no interest was allowed upon the amount of its paving assessment beyond March 5, 1906, the date mentioned in the opinion of this court upon a former appeal.

The county of Bibb and its tax collectors complain of the decree because they were, by its terms, required to contribute their proportionate part to the solicitor's fee allowed to the plaintiff.

The Scottish-American Mortgage Company, as appellant, complains of the decree for the same reason.

[1] Considering first the first complaint of the defendant W. A. Huff, based upon the allowance of a counsel fee, fixed by the court

below and charged against the fund, to the former solicitor of the defendant:

The original bill of complaint was framed upon the theory that the defendant W. A. Huff was insolvent, and upon the consequent necessity of selling his assets for the purpose of paying his debts. We have no doubt of the power of a court of equity to protect the solicitor of an insolvent defendant, whose assets are being administered through the court, in the collection of a reasonable fee for the services to the insolvent, by charging it against the fund being administered. In the absence of such authority, the insolvent's solicitor would be without protection; the court having seized all the assets of the insolvent, and there being no other resort for the collection of the solicitor's fee than the fund in court. In this case it is not contended that the fee allowed was not reasonable. The property of the defendant sold for enough to pay the charges against him, by reason of its enhancement in value after the filing of the bill and after the determination of defendant's insolvency, so that there is an apparent surplus at the present time, which may be returned to the defendant, and out of which, if not consumed, he will be able to pay his solicitor. It is clear that the court would have no authority to fix and collect the fee of a solicitor out of a solvent defendant, with the ability to arrange payment therefor himself. In such a case the collection of the fee and its amount is a matter of voluntary contract between the defendant and his solicitor, with which the court will not interfere. As it is not necessary for the court to fix the fee of defendant's solicitor and make it a charge on the fund in court, until it is determined whether there will be a surplus to be returned to the defendant after the payment of all charges and costs, we do not think that the apparent insolvency of the defendant, at a previous stage of the proceedings, would justify the court's intervention in this respect, if, in fact, it turned out ultimately that there was a surplus for the defendant. In this case, if it turns out that there is a surplus coming to the defendant ample in amount to cover the fees of his solicitors, we think there should be no fee fixed by the court and charged against and collected from the fund. On the other hand, if upon the final distribution the apparent surplus now existing is exhausted, and the defendant is left without means to pay his solicitors, then we think the action of the court below in fixing a reasonable fee, and directing that it be charged against the fund, should be sustained.

[2] 2. The defendant W. A. Huff, individually and as trustee, also complains that interest was allowed by the court upon the claims, including the secured and unsecured claims, and those for taxes and paving, while the property of the defendant was held by the court for the purpose of being subjected to the payment of his debts, and especially after its sale and the deposit of the proceeds of the sales to the credit of the cause in depositories where they drew no interest.

It is true that in the settlement of insolvent estates, and as between creditors, who stand on an equal basis and none of whom will receive payment in full, as a matter of convenience, for the purpose of distribution, interest stops as to all upon the filing of the proceeding. But this principle does not prevail as against a creditor having a prior lien on specific property, in favor of one having no such lien. First Na-

tional Bank v. Ewing, 103 Fed. 168, 43 C. C. A. 150. Nor does it prevail where the estate of the alleged insolvent turns out to be ample to pay all his creditors in full of principal and interest. This is the holding of the Supreme Court in the recent case of American Iron & Steel Co. v. Seaboard R. R. Co., 233 U. S. 261, 34 Sup. Ct. 502, 58 L. Ed. 949, distinguishing such a case from that considered in the case of Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, cited and relied upon by the appellant. While the allowance of interest in favor of the creditors, while the fund out of which they might have been earlier paid, remained in the registry of the court drawing no interest, works a manifest hardship on the defendants, it is one to be attributed to a delay, partly at least, caused by the defendants, and is one which the court is without power to remedy. The former decree of sale of January 6, 1906, affirmed by this court, provided for the running of interest on some, if not all, of the claims, and is conclusive in that respect on the parties to the cause on this appeal. We think that interest was properly allowed on all the claims, including the tax claims and paving assessments, and should continue to run as against defendants until they are paid.

[3] 3. We think the plaintiffs should be taxed with the costs of the temporary receivership in this cause, which was held by us to have been improvidently granted, as was directed to be done in the opinion of this court upon the first appeal in the cause. Huff et al. v. Bidwell et al., 151 Fed. 563, 81 C. C. A. 43. While the mandate may have contained no specific direction as to these costs, concerning itself only with the costs in this court, we think the direction of the court contained in its opinion should have been followed in the court below, and that the amount of such costs, which have been separately ascertained, should be deducted from the amounts coming to the plaintiffs upon the final distribution.

[4] 4. The defendant W. A. Huff also complains that the costs, incurred in the litigation relating to the validity of the paving assessments of the city of Macon, were taxed against the fund, instead of wholly or partly against the plaintiffs. The contention in this respect is that the litigation was unsuccessful, that the plaintiffs tendered the amount of the assessment, after having litigated it at great expense, and without benefit to the defendants or their property.

We think the doubt concerning the validity of the assessment, in view of the then decisions of the Supreme Court of the United States with reference thereto, justified the plaintiffs in making the contest, though it turned out to be fruitless, and that the costs were properly charged against the fund. The duty of the plaintiffs to resist an illegal assessment is manifest.

5. The claim is also made, in this connection, that the tender by the plaintiffs of the amount of the paving assessment to the city of Macon in this court made it the duty of the plaintiffs to pay the amount personally and not out of the fund. The plaintiffs, in a sense, were the representatives of the fund being administered, and conducted the litigation with reference to the validity of the assessment in their representative capacity, and because of their duty to resist an illegal as-

sessment, and in making the tender will be presumed to have intended to make it good out of the fund or property, for the benefit of which the litigation had been conducted by them. The opinion by this court upon appeal from the final decree of January 6, 1906, as we construe it, directs that it be so paid; the tender not having been accepted by the city of Macon. The court below properly charged the amount against the fund.

6. The defendants, W. A. Huff, Edison Huff, and Mrs. Jennings, also complain because the court failed to grant their application for the return of what is known as the Armory property; it having been reserved from sale because of the apparent sufficiency of the other property sold to pay the debts and charges without resort to it. This surplus, as found by the master, was approximately $8,000, from which, at that time, was to be deducted only one-half of the master's fee, amounting to $750. In view of the additional charges against the fund in the way of interest and costs, pending this appeal, and the possible further delay, and reduction of the fund due to it, and to any possible allowance out of it to the defendants Edison Huff and Mrs. Jennings for any interest they may establish in any of the lands sold, from which the fund was realized, we are not prepared to say that it clearly appears that the Armory property will not have to be resorted to in the future of the cause. It would seem to depend upon whether the parties proceed with the purpose of settling the few remaining questions economically and expeditiously, or in the way that seems to have been typical of the case up to this time. When, if at all, it does appear that any property seized by the court will not have to be resorted to for the purposes of the litigation, it should be promptly surrendered to the defendants by the court, leaving them to settle whatever interventions may then be pending with reference to the ownership of portions of the property in a forum of their selection, or that of the adverse claimants, who have intervened in this cause, to establish their claims.

7. The defendants Edison Huff and Mrs. Jennings also complain because they were not given a hearing either before the master or before the court upon their claim to an undivided two-sevenths interest in certain of the lands sold under the former decree of the court below. Before the decree of sale was passed, these defendants, who had been made parties defendant, either originally or theretofore, applied to the court for leave to file a cross-bill against their codefendant, the Scottish-American Mortgage Company, Limited, for the purpose of asserting a two-sevenths interest in certain of the lands, on which that company claimed a specific lien by a security deed, executed while the defendants were minors, and claimed to have been ratified by them on attaining their majority. The court below denied the defendants leave to file their cross-bill, in the same order expressly reserving their rights to assert their claim, if any they had, after sale, to the proceeds of the sale, in this language:

"It is further ordered that said respondents have leave to file appropriate proceedings and set up their rights, if any, to any portion of the fund, arising from the sale of the property, in which they claim an interest."

In his opinion, denying leave to file the cross-bill, the District Judge said:

"The court, perhaps, might be justified in holding that since, with full knowledge of their rights during the pendency of the main litigation, they failed by proper proceedings to seek the relief now claimed, they are barred from seeking it now. However, leave to file pleadings, appropriate to protect their alleged interests even after final decree, would seem under the circumstances within the discretionary power of a court of equity, and, as stated, such leave will be allowed."

In pursuance of this determination, the court below incorporated in the final decree a provision to the effect that:

"Nothing herein provided with reference to the payment of costs and expenses shall apply to the one-seventh interest to which Mattie J. C. Jennings, formerly Huff, and Edison Huff may be respectively entitled after the payment of the taxes against the properties in which they are respectively interested, and after the payment of any specific liens against such property; but the entire and unincumbered title to all of the properties shall be sold, and the said Mattie J. C. Jennings, formerly Huff, and the said Edison Huff, shall receive their respective shares of the proceeds without diminution, except for taxes and the payment of such specific liens as are chargeable against the properties in which they are interested."

In pursuance of this decree all the properties, except the Armory property, have been sold in their entirety and free from liens. No sales were made under the decree until the year 1909; it having been appealed from by the defendants. Prior to September 20, 1909, the defendants Edison Huff and Mrs. Jennings filed a petition for the allowance of a rule nisi, to be served, on all parties to the cause, to show cause why the receivers should not be directed to pay to the defendants their respective interest in the funds in their hands. The application was denied by the court below on September 20, 1909, assigning as a reason that it should be postponed until the whole fund was ready for distribution. The bulk of the property was not sold until December, 1909. Again on June 24, 1911, the defendants Edison Huff and Mrs. Jennings filed another application to have paid to them their interest in the funds in the hands of the receivers, arising from the sales of lands and the rents, accruing to their claimed two-sevenths interests. On July 6, 1912, the said defendants filed with the master, to whom the matter of distribution had been referred for report, certain requests for the recognition of their two-sevenths interest in the funds in the hands of the receivers. The master's report allowed the defendants a two-sevenths interest in what is known as the Kimball House property and in two tracts of what is known as the Vinesville property, amounting to, after proper deductions for taxes, $6,110.76, and reported to the court that under the then state of the pleadings there was no adjudication that Edison Huff and Mrs. Jennings were entitled to any further interest in the fund in court, assigning as a reason for his conclusion that the final decree, to which they were parties, recognized their two-sevenths interest in the proceeds of the Kimball House and two tracts of the Vinesville property, but disposed of all the other property of the defendant W. A. Huff, individually and as trustee, and the master also reported that the petition of Edison Huff and Mrs. Jennings for two-sevenths interest

was then pending before the court. The decree of distribution, from which the present appeal is taken, followed the master's report, and allowed the defendants Edison Huff and Mrs. Jennings an interest only in the Kimball House and the two tracts of the Vinesville property.

No reason is assigned in the decree of distribution for the court's decision. We do not think the effect of the final decree was to adjudicate that the defendants Edison Huff and Mrs. Jennings had no interest in any of the tracts sold, except the Kimball House and two Vinesville tracts. As we construe it, there was no adjudication that Edison Huff and Mrs. Jennings had any interest in any one of the tracts sold. That question was expressly reserved for determination until after the sale was had under the final decree both by the former orders of the court and by the provisions of the decree of sale itself, and defendants were given leave to then assert their claims to the proceeds of the sales. The final decree disposed of the interest of the defendants Edison Huff and Mrs. Jennings in the Kimball House and Vinesville properties, as well as it did in all the other tracts. Their interests in all the tracts were directed to be sold, without distinction, under that decree, and the proceeds to be distributed as directed. If the court should thereafter sustain the claims of the defendants Edison Huff and Mrs. Jennings as to any or all the tracts sold, the decree of sale reserved to them the right to be paid out of the proceeds of the sale. The adjudication of their interests in all the tracts, including the Kimball House and Vinesville tracts, was postponed for future determination. The lien of the plaintiff Bidwell was confined to a five-sevenths interest in the Kimball House tract, and, in directing the sale of this tract to satisfy Bidwell's lien, a five-sevenths interest only was directed to be sold, for the lien extended to no more. So with the two Vinesville tracts, a five-sevenths interest only in which were mortgaged to the defendant the Scottish-American Company. The order of sale to enforce the specific lien of the Scottish-American Company was limited to a five-sevenths interest, because the lien of that company covered no greater interest. When the decree came to order the sale for general distribution, it directed the sale of the entire interest in all the tracts, including the Kimball House and Vinesville tracts, and not merely an undivided five-sevenths interest in any. It was, therefore, neither an adjudication of a two-sevenths interest in the defendants Edison Huff and Mrs. Jennings to the Kimball House and Vinesville tracts, nor an adjudication of a lack of interest in those defendants in the remaining tracts, because they were by the decree of sale disposed of in their entirety. In fact, all the tracts were disposed of in their entirety, and in the absence of a clause reserving defendants' rights to assert their claim to the proceeds, they would have been concluded by it, as to their alleged interest in all the tracts, including the Kimball House and Vinesville tracts, an interest in which was allowed them by the court below.

The twentieth clause of the decree preserved their right to assert their interest in each tract sold, in spite of the sale, and, if established, to be paid their interest from the proceeds. Before and after the sale

they made application to the court and to the master for a hearing as to their interest in certain of the tracts, other than the three in which they were allowed an interest, and a hearing was denied them, both by the master and the court. If they have the interest they assert, it should not be subjected to pay the debts of their father, for which they are not responsible. Unless they are accorded an opportunity to establish their claim, it is clear this injustice may befall them. For this reason, we deem it imperative to remand the case, with directions to the court below to recommit to the master for the purpose of enabling the master to grant the defendants Edison Huff and Mrs. Jennings an opportunity to be heard upon the claims they assert to the fund in court. These same defendants, by virtue of their claimed two-sevenths interest in certain of the tracts sold, claim a like interest in the rents collected by the receivers from those tracts, and filed a petition for their allowance, and a request with the master to that effect. The master took no action upon their petition and request, and no allowance was made to the defendants on this account in the decree appealed from. The right of these defendants, arising from rents collected by the receivers, should be inquired into by the master also upon the recommittal of the case to him.

[5] Coming to the appeals of the appellants other than those already mentioned, their contention is that they were improperly made to contribute to the solicitor's fee allowed the plaintiffs; each being assessed for that purpose 10 per cent. of the amount of the claim. We think it clear that the claims for taxes and for the paving assessment should not have been made to contribute to this end. These claims were first liens on the respective tracts, and should have first been paid out of any available funds, as they currently accrued. We are unable to see how the tax claimants can be said to have benefited by the litigation. They did not stand on the basis of creditors, but, at least such as accrued after the filing of the bill, were part of the costs of the preservation of the property while in the custody of the court, and would have been properly treated as part of the costs of administration of the insolvent estate. We think they should all be paid, with interest from the time an execution could be legally issued for their collection, and until payment, and without deduction of any kind. We do not think that the recital of the amount due the city of Macon in the former opinion of this court, which included interest only till March 5, 1906, was intended to deprive the city of interest to the date of actual payment. It was undoubtedly contemplated by this court that the amount found due would be presently paid, as directed by the decree. As it has not yet been paid, we can see no reason for disallowing interest to the city, when it has been allowed to all other claimants, some of whose claims were subordinate to the city.

[6] Coming to the contention of the Scottish-American Mortgage Company that it should be relieved from contributing to the solicitor's fee allowed the plaintiffs, its original attitude in the litigation entitled it to such relief. It was brought into the litigation involuntarily, with the purpose of subjecting the equity of redemption in the lands on which it had a lien to the debts of the defendant W. A. Huff. Its lien

had been reduced to judgment in the state court, and the only thing left for it to do was to sell the property under execution issued upon its judgment. Its lien was prior to all other liens, except that for taxes. If this attitude had continued until the present stage of the litigation, it is clear that the involuntary contribution exacted of it would have been improper. Subsequently, however, it changed its involuntary attitude, and seems to have joined with the plaintiffs in seeking the redress prayed for in the bill of complaint. It was given relief on the final decree in the lower court, and on appeal from that decree to this court, while not made a party to the appeal, it was allowed to and did, through its solicitors, file a brief in support of the final decree and asking its affirmance. In this brief it was stated that it was "one of the principal parties to the cause, while pending in the Circuit Court," and "that it is vitally interested in upholding the decree rendered in the cause, having by far the largest interest in the subject-matter, and in the result of the litigation." It also recites that both appellants and itself were originally defendants in the cause, but that "in the course of the litigation appellants instituted a severe attack upon the Scottish-American Company, Limited, which was eventually determined against the appellants, and the issues raised were decreed in favor of the Scottish-American Mortgage Company, Limited." These recitals from its brief show an adoption, as its own, of the litigation into which it was originally brought unwillingly, perhaps, and the use of that litigation by it for its own benefit and purposes. It was benefited by the decree in two respects. It was enabled to convert its lien into money through it, without further proceedings in the state court, and it also was enabled to eliminate the claim of Edison Huff and Mrs. Jennings to an undivided two-sevenths interest in part of the lands upon which it had a lien. The extent of the benefit, as compared with that derived by the plaintiffs and other claimants and interveners, is difficult of determination; but, if reference is had to the brief referred to, its own estimate of that benefit would have justified the court below in calling upon it for at least an equal contribution with other parties to the litigation. Having adopted the litigation for its own purposes, we do not think the court was called upon to determine the amount of benefit derived, and so proportion the assessment, but might assume that it received an equal benefit with the other litigants.

The foregoing discussion disposes of the contentions of the various appellants. The conclusions reached by us require a reversal of the decree appealed from, for the purpose of allowing the defendants Edison Huff and Mrs. Jennings to assert their interests in the fund in court, arising out of their claims to undivided interests in some of the properties sold under the decree and in the rents collected therefrom by the receivers. A modification of the decree appealed from would have accomplished what we have decided, in other respects, and its affirmance, as modified. The reversal of the decree will necessarily cause a further delay in final distribution. The only remaining matter of contest, which requires the reversal of the decree and the remand of the cause, is largely one between the defendant W. A. Huff and his children, the defendants Edison Huff and Mrs. Jennings, who are rep-

resented on this appeal by the same counsel. This is true, at least, if, after allowance to the defendants Edison Huff and Mrs. Jennings, and after taking into consideration the Armory property, there still remains a surplus, after the payment of all debts and charges, equal to the undivided two-sevenths interest of the defendants Edison Huff and Mrs. Jennings. It would manifestly be to the interest of these two defendants, if this be the situation, not to insist upon the further litigation as to their claim to the two-sevenths interest, and thereby prevent the further delay and expense necessary in case of a remand of the case, and they would also thereby acquire the immediate possession of the Armory property. In that event the intervention of the representatives of Alexander Proudfit should be dismissed without prejudice and without costs, in view of the apparent insolvency of the defendant W. A. Huff when it was filed. The decree of distribution, on application to this court, could be modified in other respects in conformity with this opinion, and, as modified, affirmed, and the Armory property surrendered to the defendants, and the pending interventions affecting it dismissed, without prejudice to the rights of the interveners to assert their claims in independent proceedings, if so advised, and the surplus paid over to the defendants.

In order that the injury from the delay may be as little as possible, in the event the case is remanded, there should be a partial distribution of claims having priority, especially those for taxes and paving assessments and that of the Scottish-American Mortgage Company, Limited, as soon after the cause is remanded to the court below as is possible, and the cause should be promptly recommitted to the master to enable him to hear and to determine the claims of the defendants Edison Huff and Mrs. Jennings for their alleged interest in the corpus of certain of the properties, and in the rents thereof, and after such hearing, and the report of the master thereon, to be proceeded with by a decree distributing the remaining fund in conformity with the opinion of this court. The costs of this court, in view of the complicated situation presented by the many appeals from the decree and the discretion permitted the court in the matter of costs, to be taxed against the fund in the registry of the court, except those accruing upon the appeal of the Scottish-American Mortgage Company, Limited, which are to be taxed against the appellant; the decree appealed from having been affirmed, so far as affected by that appeal.