# Richmond

METOMPKIN BANK & TRUST COMPANY, RECEIVER, ETC. V. BRONSON AND MOORE, RECEIVERS, ETC.

April 10, 1939.

Record No. 2052.

Present, All the Justices.

The opinion states the case.

*B. Drummond Ayres,* for the appellant.

*E. Almer Ames, Jr.,* and *David J. Mays,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This case requires a consideration of the rules dealing with the rights of a creditor holding collateral security in the distribution of an insolvent estate.

The Accomack Banking Company, Inc., engaged in a general banking business, finding itself in financial straits, on December 21, 1931, closed its doors and suspended business. At that time, it was indebted to the American Bank and Trust Company in the principal amount of $125,297.46, evidenced by notes and overdrafts of the debtor. The

American Bank and Trust Company held as collateral security for the said indebtedness various receivables of the debtor, aggregating in face value approximately twice the amount of the said indebtedness, in addition to a guarantee of payment by certain directors of the debtor corporation.

Upon the petition of the State Corporation Commission of Virginia, the Metompkin Bank and Trust Company, on the 4th day of February, 1932, was duly appointed and immediately qualified as receiver for the Accomack Banking Company, Inc.

The American Bank and Trust Company, in April, 1932, filed with the receiver of the Accomack Banking Company, Inc., a sworn statement and proof of claim for the principal sum of $125,297.46, with interest on several portions thereof from various dates.

Subsequent to the filing of its claim, the American Bank and Trust Company likewise suspended business, and was placed in receivership, Sherlock Bronson and T. Justin Moore duly qualifying and acting as its receivers.

After the filing of its claim, and before the 4th day of December, 1937, the American Bank and Trust Company or its receivers began the sale and liquidation of the collateral held for the debt aforesaid, and collected and received therefrom the sum of $118,915.21, net. All of this was credited on the principal of said indebtedness except the sum of $8,703.40, which sum was credited on interest accruing on the principal indebtedness both before and after the date of the receivership of the debtor.

A dividend of 7% was ordered by the trial court to be paid to the general creditors by decree of December 4, 1937. Questions then arose,—(1) whether the American Bank and Trust Company was entitled to receive a dividend on the full amount of the debt proved, irrespective of the collateral security held for the debt, or was entitled to be allowed a dividend only upon the difference between the proved debt and the amount realized from a sale of the collateral after the debt had been proven, and (2) whether the creditor had the right to credit upon interest rather than

upon the principal any of the funds received from the sale or liquidation of its collateral.

The trial court held that the dividend should be paid on the basis of the full amount of the claim as originally filed until the sum of all such dividends, together with collections already made, or which might thereafter be made from the said collateral, should equal the sum of $125,297.46, exclusive of the amount applied to interest upon the principal indebtedness by the creditor from the sale or liquidation of the collateral held by it.

While there is considerable conflict in the several jurisdictions of this country over the correct rule dealing with the rights of creditors holding collateral security in the distribution of insolvent estates, the majority of the State courts and all the Federal courts, so far as we are advised, have adopted the so-called old English or chancery rule. While authority, therefore, is not wanting for the adoption of either of the four rules mentioned in the decisions, the decisions are dependent upon the rule applied in the respective jurisdictions.

The chancery rule holds that a creditor of an insolvent estate is entitled to receive a dividend on the full amount of his proved debt, irrespective of any collateral security held for the debt where the collateral is insufficient to pay the debt, until the amount received both from the sum of the dividends and of collateral collected is sufficient to satisfy the entire debt.

In Virginia preference was expressed for the application of the chancery rule in *Pace* v. *Pace's Adm'r*, 95 Va. 792, 793, 30 S. E. 361, 44 L. R. A. 459. In *First Nat. Bank of Richmond* v. *William R. Trigg Co.*, 106 Va. 327, 56 S. E. 158, this rule was adopted and applied, and in *Greenbrier Joint Stock Land Bank* v. *Opie* (1935), 165 Va. 334, 182 S. E. 255, a case similar in many respects, and involving practically the identical question here, the chancery rule was clearly, definitely and expressly adopted.

In *Greenbrier Joint Stock Land Bank* v. *Opie, supra*, a first lien creditor was brought into the suit by the execu-

tor of the lien creditor's debtor for the settlement of the estate. The first lien creditor contended that it was entitled to stand upon its deed of trust and to request a foreclosure of the same as it deemed advisable. The trial court ordered a sale of the lien property, and the sale brought an insufficient amount to satisfy the first lien. It then sustained the contention of the general creditor that the first lien creditor was entitled to prove and be allowed a dividend only upon the difference between the entire debt and the amount later realized from the sale of the collateral. Upon appeal, we held that the first lien creditor should have been allowed to receive a dividend out of the general fund being administered in the suit, on the basis of the full amount of its claim at the time of the death of the decedent, irrespective of the amount received from the sale of the collateral.

Mr. Justice Gregory in an able and learned opinion reviewed the history and application of the four rules dealing with the distribution of insolvent estates which are variously applied in the several jurisdictions. He cited many pertinent cases and authorities, and reached the conclusion adopted by this court, that the chancery rule is, and has been for many years, effective in Virginia. The reasoning for the conclusion is correctly and concisely stated and supported by ample and sound authority. We are unable to improve upon the language used and, for the sake of avoiding repetition, are content to reaffirm the principles therein expressed.

In addition to the authorities cited in the above case, there are many other well considered cases of like import from other jurisdictions. The rule appears undoubtedly to be supported by the greater weight of authority. The cases hereinafter cited and the following are in point and approve the doctrine: *Kellogg* v. *Miller*, 22 Ore. 406, 30 P. 229, 29 Am. St. Rep. 618; *Corbett* v. *Joannes*, 125 Wis. 370, 104 N. W. 69; *Merchants National Bank* v. *Flippen*, 158 N. C. 334, 74 S. E. 100; *People* v. *Remington & Sons*, 121 N. Y. 328, 24 N. E. 793, 8 L. R. A. 458; *Allen* v. *Danielson*, 15 R. I. 480, 481, 8 A. 705; *In re Bates*, 118 Ill. 524, 9 N. E. 257, 59

Am. Rep. 383; *Paddock* v. *Bates,* 19 Ill. App. 470; *Walker, Smith & Co.* v. *Baxter,* 26 Vt. 710; *Moses* v. *Ranlet,* 2 N. H. 488; *Graeff's Appeal,* 79 Pa. 146; *Detroit Trust Co.* v. *Detroit City Service Co.,* 262 Mich. 14, 247 N. W. 76; *State* v. *State Bank of Alamogordo* (1934), 38 N. M. 338, 32 P. (2d) 1017; *Washington-Alaska Bank* v. *Dexter Horton National Bank,* 263 F. 304; *Hendrie* v. *Graham,* 14 Colo. App. 13, 59 P. 219; *Williams* v. *Overholt,* 46 W. Va. 339, 33 S. E. 226.

Plaintiff in error further contends that even though the chancery rule be in effect in this State, a creditor has no right to apply proceeds from the collateral held by him to the payment of interest on the debt secured by the collateral after the date of the insolvency. It is argued that upon a receivership a creditor changes his position, in a limited sense, to that of a part-owner in the assets in the receivers' hands; that is, to the extent of his claim at the date of insolvency; and that if any payment or part-payment is made from other sources, such payment must be treated as having been made upon the fixed amount of that claim with reference to the right to share in the receivers' assets.

The fallacy of this argument is apparent. The status of a creditor who holds collateral as security for the debt by virtue of his contract with the debtor has been overlooked. The secured creditor is not confined to a mere right to share in the receivership assets.

Interest ceases upon unsecured claims against assets insufficient to pay all claims in full on the date of the declaration of insolvency. The same rule is applicable when all claims are of equal rank or dignity. The reasons for that principle do not apply where there are sources outside of the assets in the hands of the receiver against which the secured creditor may assert his claim.

In receivership proceedings, a general or unsecured creditor has two possible sources of payment:—(1) From the debtor himself, should he ever acquire more property,— a right *in personam;* and (2) a right *in rem* as to the assets in the hands of the receiver.

■■ The secured creditor has an additional source of payment,—funds arising from liens which he holds, or from collateral in his hands. This arises from the contract between parties. The contract is for the payment of the entire debt, and the entire debt includes not only the principal but interest as an incident of the debt. The purpose of giving collateral is to favor the creditor and to give to him an advantage in the collection of the debt.

■■ Under the chancery rule, the accident of insolvency does not take from the creditor any vested right. The remedy *in rem* remains as to the assets of the debtor's estate. The collateral remains as security for the payment of the whole of the contracted debt. Neither the insolvent estate, nor other creditors have any claim upon the collateral or any part thereof until the entire debt of the secured creditor is satisfied, or thereafter, except as to so much as may prove to be in excess of the amount required to satisfy the secured creditor's claim in full. The entire debt is the amount the creditor is entitled to collect from the debtor at the time of payment, and not the amount due at the date of insolvency.

■ The secured creditor's claim, for the purpose of receiving dividends from the receiver's assets, is fixed as of the date of the receivership. The effect of a receivership upon a creditor holding collateral security is to give to him, in addition to his right of action *in personam,* a substitute for his right of action *in rem,* theretofore existing, a right to a proportionate share of the impounded assets,—a right to receive such a part thereof as his total proved demand bears to the total of all demands against the insolvent estate, unaffected by the fact that he holds security for a part of his debt. He still has, however, by virtue of the special contract under which he obtained the collateral, the right to collect, through liquidation of the collateral, the full amount of his debt, principal and interest.

The bankruptcy rule, which is administered under the bankruptcy statutes, ignores the contract between the

parties and the diligence of the secured creditor in providing an additional fund for his protection.

A majority of the cases and the more modern decisions support the foregoing principles.

The case of *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640, is a leading federal case recognizing the chancery rule. It specifically refers to the opinion of Judge Taft in *Chemical National Bank* v. *Armstrong* (C. C. A. 6), 59 F. 372, 28 L. R. A. 231, and the reasons therein given for the adoption of the chancery rule. The facts in the *Jacksonville Bank Case* are very similar to the facts in the instant case. In that case the Circuit Court of Appeals held that the bank "was entitled to prove its claim to the entire amount of the indebtedness, and to the payment thereon of the same dividends as had been paid on other indebtedness of the Palatka Bank, with interest on such dividends from the date of the declaration thereof, less a credit of the sums which had been paid as dividends on the part of the claim theretofore allowed, provided the dividends theretofore paid and thereafter to be paid on the sum of $10,093.34, together with the amounts theretofore and thereafter received on the collaterals securing that indebtedness, should not exceed one hundred cents on the dollar of the principal and interest of said debt." [173 U. S. 131, 19 S. Ct. 361.]

In affirming the Circuit Court of Appeals, the Supreme Court said:

"It is well established that in marshalling assets, as respects creditors, no part of his security can be taken from a secured creditor until he is completely satisfied. Leading Cases in Equity, White & Tudor, Vol. II, Part 1, 4th Amer. Ed., pp. 258, 322.

"We think the collateral is security for the whole debt and every part of it, and is as applicable to any balance that remains after payment from other sources, as to the original amount due, * * * .

"Doubtless the title to collaterals pledged for the security of a debt vests in the pledges so far as necessary to accom-

plish that purpose, but the obligation to which the collaterals are subsidiary remains the same. The creditor can sue, recover judgment, and collect from the debtor's general property, and apply the proceeds of the collateral to any balance which may remain. Insolvency proceedings shift the creditor's remedy to the interest in the assets. As between debtor and creditor, moneys received on collaterals are applicable by way of payment; but as under the equity rule the creditor's rights in the trust fund are established when the fund is created, collections subsequently made from, or payments subsequently made on, collateral, cannot operate to change the relations between the creditor and his co-creditors in respect to their rights in the fund."

In *Huff* v. *Bidwell,* 133 C. C. A. 646, 218 F. 6, 9, the court said:

"It is true that in the settlement of insolvent estates, and as between creditors, who stand on an equal basis and none of whom will receive payment in full, as a matter of convenience, for the purpose of distribution, interest stops as to all upon the filing of the proceeding. But this principle does not prevail as against a creditor having a prior lien on specific property, in favor of one having no such lien. *First National Bank* v. *Ewing,* 103 F. 168, 43 C. C. A. 150."

In *United States Fidelity & Guaranty Co.* v. *Centropolis Bank,* 17 F. (2d) 913, at page 915, 53 A. L. R. 295, it is said:

"Where the creditor of an insolvent bank holds collateral security for the payment of its debt, it is entitled to the allowance of a claim for the full amount of its debt, and to the payment of dividends on the entire debt, *pro rata* with general creditors, until the dividends, plus the amount realized from the security, equal the full amount of the debt. *Merrill* v. *National Bank of Jacksonville,* 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; *Chemical National Bank* v. *Armstrong* (C. C. A. 6), 59 F. 372, 28 L. R. A. 231; *Commercial & Savings Bank* v. *Jenks Lumber Co.* (C. C.) 194 F. 732; *Washington-Alaska Bank* v. *Dexter Horton National Bank of Seattle, Washington* (C. C. A. 9), 263 F. 304;

*Goodman Mfg. Co.* v. *Pittsburgh-Buffalo Co.* (C. C. A. 3), 265 F. 561; *Pintsch Compressing Co.* v. *Buffalo Gas Co.* (C. C. A. 2), 280 F. 830, 844, 845; 32 C. J. p. 882, sec. 176."

Again, in *Peter A. Frasse & Co.* v. *Hartford Automotive Parts Co.*, 300 Fed. 876, 880, the court in approving the rule stated in *Spring Coal Co.* v. *Keech* (Fourth Circuit), 239 F. 48, L. R. A. 1917D, 1152, said:

"A further question is raised by the exceptions as to the date when interest on these claims should cease, and the master has applied the general rule relating to the unsecured claims against insolvent estates, that interest ceases on the appointment of a receiver. *Samuels* v. *E. F. Drew & Co.* (C. C. A.) 292 F. 734, at page 736. This is the general rule among unsecured claimants, when the estate under administration is insufficient to pay all claims in full. However, when a claimant holds security for the payment of his claim, such security may be exhausted in paying the claim in full, with interest at the rate provided in the contract to the time of payment; and the same rule as to full payment, with interest to the date of payment, applies where the estate is solvent and sufficient to make such payment to all the creditors. *American Iron, etc., Co.* v. *Seaboard Air Line Ry.*, 233 U. S. 261, 34 S. Ct. 502, 58 L. Ed. 949; *Spring Coal Co.* v. *Keech*, 239 F. 48, 152 C. C. A. 98, L. R. A. 1917D, 1152; *Huff et al.* v. *Bidwell et al.*, 218 F. 6, 133 C. C. A. 646."

In *Detroit Trust Co.* v. *State Bank of Michigan*, 150 Mich. 530, 114 N. W. 327, 329, a case directly in point upon the question of the right to apply proceeds from collateral to the payment of interest, the court expressly held:

"Until the debt is paid in full, principal and interest, the creditor is entitled to such dividends as may be declared upon the total of the debt as proved. It is entirely immaterial to the receiver in what manner proceeds of collateral are applied, to the point when the sum of the dividends and of collateral collected has extinguished the entire debt, principal and interest."

In *New York Security & Trust Co.* v. *Lombard Inv. Co. of Kansas,* 73 F. 537, 554, the court quoted with approval the report of the master therein, saying:

"Collateral security, by mortgage or otherwise, held by the claimant, does not affect the claimant's right to prove up for the full amount of his claim; nor does the fact that he has realized a part of his claim from the subjection of such collateral, since the date of the receivership; but he is entitled in such case to receive distributions or dividends from the general estate, until such dividends, added to the amount realized from the collateral, are equal to or sufficient to satisfy his debt."

The words "entire debt," "whole debt," and "full amount of the debt" mean all that the debtor owes, and, therefore, necessarily include principal and interest.

We conclude, therefore, that a secured creditor is entitled to receive dividends on the amount of his claim as it stands at the time of receivership, plus the amount he receives from the lien or the collateral he holds, until the aggregate net amount received by him equals the amount of the entire debt, principal and interest.

The decree complained of is affirmed.

*Affirmed.*