**Gregory C. KLIPP and Carl F. Klipp, Appellees,**

v.

**IOWA GRAIN INDEMNITY FUND BOARD, Appellant.**

**No. 92–1105.**

Supreme Court of Iowa.

June 16, 1993.

Bonnie J. Campbell, Atty. Gen., and Timothy D. Benton, Asst. Atty. Gen., for appellant.

Thomas S. Reavely and Cindy L. Vraspir, Des Moines, for appellees.

Eldon L. McAfee of Beving, Swanson & Forrest, P.C., Des Moines, for amicus curiae Iowa Grain and Feed Ass'n.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and LAVORATO, JJ.

LARSON, Justice.

This is an appeal by the Iowa Grain Indemnity Fund Board from a judgment of the district court allowing indemnity to farmers who sold grain to an insolvent purchaser. *See* Iowa Code ch. 543A (1989) (now chapter 203D (1993)). We reverse and remand.

During October and November 1990, Carl and Gregory Klipp delivered corn and soybeans to the Packwood Farmers Elevator, a facility owned by the Des Moines Grain Company. Des Moines Grain held both a grain dealers license and a grain warehouse license from the Iowa Department of Agriculture and Land Stewardship.

When the Klipps delivered the grain, they entered into credit-sale contracts with the elevator. Each contract specifically warned that credit sales were not covered by the indemnity fund, stating "Seller is herewith informed that this contract is not covered by the Iowa Grain Indemnity Fund, Chapter 543A, Code of Iowa." The Klipps also acknowledged, in writing:

1. That no recovery for losses resulting from the sale of grain under the above-numbered credit-sale contract will be available from Iowa's Grain Depositors and Sellers Indemnity Fund should the buyer fail to perform under this contract.

2. If a loss is incurred as a result of the grain dealer's failure to make payment for grain purchased under this credit-sale contract, or its financial insolvency, the seller will not be eligible to receive indemnification from Iowa's Grain Depositors and Sellers Indemnity Fund.

These credit-sale contracts did not set a price for the grain, providing only that the price would be set "on or before" October 9, 1991. The contracts provided that the purchase price for the grain would not be *paid* before October 9, 1991. Title to the grain passed to the elevator on the execution of the contracts.

A credit-sale contract is defined as follows:

*"Credit-sale contract"* means a contract of the sale of grain pursuant to which the sale price is to be paid more than thirty days after the delivery of the grain to the buyer, and includes but is not limited to those contracts commonly referred to as deferred-payment contracts, deferred-pricing contracts, and price-later contracts.

Iowa Code § 543.1(4) (1991) (now § 203C.1(4)).

Chapter 543A specifically excludes credit sales from the indemnity provisions of that chapter:

For purposes of this paragraph, a claim derives from a covered transaction if the claimant is a seller who transferred title to the grain dealer *other than by credit-sale contract* within six months of the incurrence date....

Iowa Code § 543A.6(3)(d) (emphasis added).

On December 28, 1990, the Klipps went to the Packwood elevator where they received "purchase confirmations," which established the purchase price for the corn and beans under the contracts. Although the written confirmations did not establish a payment date, Klipps contend that they

were told they would be paid on January 2 or 3, 1991. This is not disputed by the board.

On the same day Klipps received the purchase confirmations and agreed on the price for the grain, the grain dealer and warehouse licenses of Des Moines Grain were suspended, and the elevator later filed for bankruptcy. The Klipps did not receive payment under their contracts, and they filed claims for indemnity with the board. Relying on section 543A.6(3)(d), the board denied indemnity on the ground that the Klipps sold their grain under credit-sale contracts.

The district court reversed, holding that the agreements entered into on December 28, 1990, amounted to novations of the original contracts and that they no longer were credit-sale contracts under section 543A.6(3)(d). The court concluded that, by accelerating the date for payment and establishing a sale price on the grain on December 28, 1990, the original credit-sale contracts had been replaced by agreements that qualified for indemnity under the fund.

While the district court referred to the substituted agreements as novations, the Restatement would characterize them as "substituted contracts." According to the Restatement,

[a] novation is a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty.

Restatement (Second) of Contracts § 279 (1981). In contrast,

(1) A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.

(2) The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty.

Restatement (Second) of Contracts § 280; *see also* Arthur L. Corbin, *Corbin on Contracts* § 1293, at 190 (1962) ("The term 'substituted contract' is more likely to be used where there are no new parties; and

the term 'novation' where a new party is involved."); *Mello v. Coy Real Estate Co.,* 103 R.I. 74, 78, 234 A.2d 667, 671 (1967).

■ Substitution (or novation) of the contract is not easily established. As we said in *In re Estate of Eitzen,* 231 Iowa 1169, 3 N.W.2d 546 (1942):

"It is well settled that novation is never presumed, but must be proved, and all the essentials of a novation must be established by legal and sufficient evidence. The burden of proving a novation rests upon him who asserts it, and where a novation is pleaded in defense, the burden of establishing it is on the defendant."

. . . .

"Novation may be established either by direct evidence or circumstantially by proof of facts from which the intention to effect such an agreement may be reasonably implied. However, to establish novation the proof should be clear and satisfactory."

*Id.* at 1176–77, 3 N.W.2d at 553–54 (quoting 39 Am.Jur. § 33, at 272 and § 34, at 273). To establish a substitution or novation of a contract, the claimant must show (1) a previous valid obligation, (2) agreement of all parties to the new contract, (3) extinguishment of the old contract, and (4) validity of the new contract. *Id.* at 1175, 3 N.W.2d at 552.

■ Here, the record cannot support the conclusion that the December 28 confirmations extinguished the old contracts in favor of new ones. The establishment of the sale price in the confirmations of December 28 was not inconsistent with the credit-sale agreements; in fact, the confirmation of the agreements and the establishment of a sale price were merely in pursuance of the original credit-sale agreements.

The only deviation from the original credit agreements was to accelerate the payment date from October 1991 to January 1991. In all other respects, it would still be necessary to refer to the old agreements in order to give meaning to the parties' respective contract rights and obligations. For example, only the original contract pro-

vided details as to the bushels of grain and the manner of establishing terms and dates of payment. *See Advanced Management Research, Inc. v. Emanuel,* 439 Pa. 385, 388, 266 A.2d 673, 676 (1970) (changes in original agreement that could not constitute meaningful contract without reference to the original agreement constituted a modification of an original agreement, not novation).

The court erred in determining as a matter of law that the parties' agreements were not credit-sale contracts under Iowa Code section 543.1(4). We reverse and remand with instructions to dismiss the petition for judicial review.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**