Present:  All the Justices

SWISS RE LIFE COMPANY AMERICA, ETC.

                              OPINION BY JUSTICE LAWRENCE L. KOONTZ, JR.
v. Record No.  961078                    JANUARY 10, 1997

ALFRED W. GROSS, ETC., ET AL.

FROM THE STATE CORPORATION COMMISSION

In this appeal from the State Corporation Commission (Commission), the primary issue we consider is whether Code § 38.2-1509 permits a reinsurer for an insurance company in receivership to obtain administrative priority over other creditors in recovering amounts owed it under an ongoing treaty of reinsurance with the insolvent company.  The reinsurer also raises additional issues related to its claim against the insolvent insurer.  For the reasons that follow, we will affirm the decision of the Commission.

I. BACKGROUND

On December 28, 1990, Fidelity Bankers Life Insurance Company (Fidelity) sold a portion of its traditional life insurance business to Protective Life Insurance Company (Protective).  As a condition of the purchase, Protective required Fidelity to provide Protective with an independent guarantee against potential losses from excess mortality claims among insureds under the policies Protective would acquire in the transaction.

To satisfy this requirement, Fidelity, Protective, and North American Reassurance Company, now known as Swiss Re Life Company America (Swiss Re), entered into reciprocal treaties of

reinsurance, sometimes referred to as "stop-loss" agreements. Under the terms of its treaty of reinsurance with Protective (the Protective treaty), Swiss Re agreed to indemnify Protective for any payments above levels established in agreed-upon mortality schedules for the policies Protective acquired from Fidelity. In the treaty of reinsurance between Swiss Re and Fidelity (the Fidelity treaty), Fidelity agreed to indemnify Swiss Re for any payments Swiss Re made to Protective under the Protective treaty. Both agreements contained provisions for interest to accrue on amounts owed on claims under the agreements. In return for fulfilling its duties under the treaties of reinsurance, Swiss Re would receive a fee of approximately $40,000 per year.

On May 13, 1991, Fidelity went into receivership by order of the Circuit Court of the City of Richmond, which appointed the Commission as receiver, pursuant to Code § 38.2-1505. On that same day, the Commission appointed the Commissioner of Insurance as deputy receiver of Fidelity, pursuant to Code § 38.2-1510.

Subsequently, Protective made demand under its treaty with Swiss Re for excess mortality losses for calendar year 1991 in the amount of $1,134,923. Swiss Re satisfied this demand, which included a small amount of interest, and ultimately filed a claim for that sum with the deputy receiver. Swiss Re sought administrative priority for that sum, due it under the Fidelity treaty, as an administrative expense under Code § 38.2-1509. Swiss Re also sought interest on this debt.

The deputy receiver, while acknowledging the claim against the receivership estate, classified Swiss Re as an unsecured

creditor of Fidelity, denied its claim for administrative priority, and disallowed its claim for interest. Thereafter, the deputy receiver disavowed further obligations under the Fidelity treaty as an executory contract, pursuant to the Commission's order granting the deputy receiver the authority to "affirm or disavow any contracts to which [Fidelity] is a party." The parties do not dispute the propriety of this grant of authority by the Commission to the deputy receiver.

In July 1991, Swiss Re acquired from Integrated Resources Life Insurance Company (Integrated) various reinsurance treaties (the Integrated treaties) including some polices for which Fidelity was the indemnified party. Swiss Re held additional reinsurance treaties for which Fidelity was the indemnified party (the non-Integrated treaties) predating the Fidelity and Protective treaties. As a result, Swiss Re became both a debtor and a creditor of Fidelity. Consequently, Swiss Re attempted to set off payments it owed to Fidelity under these treaties by the amount Fidelity owed to it as a result of the payments Swiss Re made to Protective. The deputy receiver disallowed this practice, citing a lack of mutuality of the debts and credits as required under Code § 38.2-1515 and as a matter of public policy.

In a petition for review, Swiss Re appealed these determinations to the deputy receiver. It asserted that the disavowal of the Fidelity treaty with the Protective treaty remaining in effect was not appropriate because these agreements were part of one contract, and that it had entered into them only as a pass-through agent, assuming no risk of Fidelity's

insolvency. In the alternative, Swiss Re asserted that, notwithstanding Fidelity's future obligation to pay sums which might come due, the Fidelity treaty was not an executory contract in that its overall purpose, the provision of a reinsurance guarantee, had already been performed.

Upon review of Swiss Re's appeal, the deputy receiver retracted his disavowal of the Fidelity treaty, stating that it would be "treated as [if] it was never disavowed, and . . . the status quo ante is restored." The deputy receiver left undisturbed the remainder of his prior determinations. Swiss Re then pursued an appeal before the Commission.[*]

In its petition to the Commission for review of the appeal to the deputy receiver, Swiss Re asserted that the Fidelity treaty was an executory contract and that the deputy receiver's retraction of his disavowal of the Fidelity treaty was a de facto assumption of it. Consequently, Swiss Re contended that it was entitled to priority in the distribution of the assets of Fidelity's receivership estate on the ground that the obligations of an assumed contract were expenses of administration as provided by Code § 38.2-1509. Swiss Re further asserted that it was entitled to the interest provided for under the Fidelity treaty as an expense of administration on the ground that the interest called for was not in the form of a default penalty, but

---

[*]During the pendency of its appeal before the Commission, Swiss Re continued to pursue new claims and related matters arising out of the Fidelity treaty before the deputy receiver. The Commission consolidated Swiss Re's appeal of unfavorable decisions on these matters with the prior appeal.

served to compensate Swiss Re for the time value of the funds it had paid to Protective.  Swiss Re also challenged the denial of a set off for its debts to Fidelity under the other treaties.

In this petition to the Commission and in subsequent pleadings, Swiss Re asserted the need for an evidentiary hearing by the Commission.  The Commission, after determining that there were no material issues of fact in dispute, considered the appeal on the record and issued its decision without conducting a hearing.  During the 21-day period after entry of the final order during which the Commission retained jurisdiction over the matter, Swiss Re made no objection to the failure to conduct a hearing.

In its final order, the Commission denied Swiss Re's claim for priority, citing Code § 38.2-1509, and its claim for set off of the debts it owed Fidelity under the Integrated treaties, finding that there was a lack of mutuality.  The Commission reversed the deputy receiver's denial of a set off for the non-Integrated treaties, finding that there was adequate mutuality and no violation of public policy.  Lastly, the Commission rejected Swiss Re's claim for interest on the amounts due under the Fidelity treaty on the ground that, even if the interest was commercially reasonable, the policy against payment of interest on claims against an insurer in receivership prevailed.  Swiss Re then filed a petition for an appeal of right before this Court.

## II.  STANDARD OF REVIEW

Our review is guided by well established principles.  On appeal, the findings of the Commission are presumed to be just,

reasonable, and correct.  <u>Bralley-Willett v. Holtzman Oil</u>, 216 Va. 888, 890-91, 223 S.E.2d 892, 895 (1976).  The decisions rendered by the Commission "must be ascribed the respect due to the judgments of a 'tribunal appointed by law and informed by experience.'"  <u>Chesapeake & Potomac Telephone Co. v. Commonwealth</u>, 147 Va. 43, 58, 136 S.E. 575, 579 (1927)(quoting <u>Illinois Central Railroad Co. v. Interstate Commerce Commission</u>, 206 U.S. 441, 454 (1907)).  Accordingly, a presumption of correctness attaches to actions of the Commission, <u>Farmers & Merchants National Bank v. Commonwealth</u>, 213 Va. 401, 404, 192 S.E.2d 744, 747 (1972), and its orders will not be disturbed when they are based upon the application of correct principles of law. <u>Commonwealth v. Washington Gas Light Co.</u>, 221 Va. 315, 325, 269 S.E.2d 820, 826 (1980).

### III.  DISCUSSION

#### A.  DENIAL OF EVIDENTIARY HEARING: DUE PROCESS

Swiss Re asserts on appeal that the failure of the Commission to conduct an evidentiary hearing violated its due process right to present evidence and be heard in a timely fashion.  We recognize that "[p]rocedural due process . . . is a constitutional right which applies to . . . adjudicative or quasi-judicial proceedings."  <u>County of Fairfax v. Southern Iron Works, Inc.</u>, 242 Va. 435, 444, 410 S.E.2d 674, 679 (1991). However, although Swiss Re indicated that it wanted to present facts in a hearing, the constitutional due process claim was not raised below.  Accordingly, we will not consider this issue for the first time on appeal.  Rule 5:25.

B. CLAIM FOR ADMINISTRATIVE PRIORITY

1.  Retraction of Disavowal as Assumption of Fidelity Treaty

Swiss Re asserts that the deputy receiver's retraction of his prior disavowal of the Fidelity treaty constituted an assumption of the contract.  As such, Swiss Re contends that this step gave rise to an irrebuttable presumption that the deputy receiver recognized the Fidelity treaty as beneficial to the receivership estate, that an actual benefit was conferred on that estate, and that the obligations incurred under the Fidelity treaty are therefore expenses of administration entitled to priority under Code § 38.2-1509.  We need only address this issue to the extent that it bears upon Swiss Re's ultimate contention that it is entitled to administrative priority.  Clearly, without an assumption of the Fidelity treaty, Swiss Re was an unsecured creditor of Fidelity.

Swiss Re asserts that the Fidelity treaty was an executory contract, and, thus, once disavowed, any resumption of the contract would necessarily constitute an assumption of Fidelity's rights and obligations under the contract.  In support of its position, Swiss Re relies upon authority in bankruptcy law that an assumption need not be express, so long as the intent of the debtor-in-possession is clear.  See, e.g., In re A.H. Robins Co, 68 B.R. 705, 708 (E.D. Va. 1986).  However, Swiss Re properly notes on brief that "[g]eneral principles of bankruptcy law [are] not technically applicable in state insurance company receivership proceedings" and we will not address that matter here.

Rather, we will assume that the Fidelity treaty was an executory contract. We agree with Swiss Re that, under the authority granted to the deputy receiver by the Commission's order, the Fidelity treaty was subject to assumption by the deputy receiver. We fail to see, however, how the deputy receiver's election, at Swiss Re's behest, to retract his prior decision and treat the Fidelity treaty "as [if] it was never disavowed" and to restore "the status quo ante" evinces an intent to assume the contract. To the contrary, the clear intent as expressed by the language in the deputy receiver's decision was to make his prior act a nullity and to restore Swiss Re to its original position. In that position, Swiss Re was an unsecured creditor of Fidelity for both prior and succeeding claims under the Fidelity treaty.

2. Equitable Claim for Priority

Swiss Re further asserts that even if it is not entitled to administrative priority for the amounts owed it under the Fidelity treaty as an expense of administration, equity requires that it be given priority over all other creditors of the Fidelity receivership estate. Swiss Re asserts that it was "gulled" by Fidelity to enter into the Fidelity and Protective treaties as a "favor," and that Fidelity deliberately misled Swiss Re as to Fidelity's solvency.

This assertion is belied by the undisputed facts of the case. Swiss Re is a company experienced in the practice of issuing and administering treaties of reinsurance. Nothing in the record suggests that Swiss Re's agreements with Fidelity and

Protective were not arm's length transactions by sophisticated parties of equal position. Nor was Swiss Re prevented from making inquiries into the financial condition of Fidelity. Protective's obvious concerns with respect to Fidelity's position expressed during the negotiations were sufficient to place Swiss Re reasonably on notice as to the potential for difficulties in the future. Under such circumstances, equity cannot be invoked to permit a party to avoid the consequences of what became an ill-advised transaction. See Curtis v. Lee Land Trust, 235 Va. 491, 498, 369 S.E.2d 853, 857 (1988). Such is particularly the case here where an unsecured party seeks a priority over the claims of policyholders of an insolvent insurance company.

3. Application of Code § 38.2-1509

Code § 38.2-1509(B), as in effect in 1991, controls the manner in which the Commission will pay claims out of the estate of the insolvent insurer. In pertinent part, the statute read:

> The Commission shall disburse the assets of an insolvent insurer as they become available in the following manner:
>
> 1. Pay, after reserving for the payment of the costs and expenses of administration, according to the following priorities: (i) wages entitled to priority as provided in § 38.2-1514, (ii) claims of secured creditors with a perfected security interest not voidable under § 38.2-1513 to the extent of the value of their security, (iii) taxes owed to the United States and other debts owed to any person, including the United States, who by the laws of the United States are entitled to priority, (iv) claims of the associations for "covered claims" as defined in § 38.2-1603 and claims of other policyholders apportioned without preference, and (v) other creditors . . . .

Because we find no merit in Swiss Re's claims for

administrative priority for the amounts owed to it under the Fidelity treaty, Code § 38.2–1509 provides the sole vehicle for Swiss Re to recover. As an unsecured creditor, Swiss Re's priority falls within that class of creditors addressed in the statute, and its claim is to be satisfied accordingly.

## A. CLAIM FOR INTEREST

Swiss Re asserts that it is entitled to interest on the amounts owed it under the Fidelity treaty based upon the provision for interest in the treaty itself. Virginia law prohibits creditors of an insolvent estate from earning interest on their claims. Metompkin Bank & Trust Co. v. Bronson, 172 Va. 494, 500, 2 S.E.2d 323, 325 (1939). Accordingly, the claim is without merit.

## D. CLAIM FOR SET OFF

Swiss Re asserts that the Commission erred in not permitting it to set off sums owed by it to Fidelity under the Integrated treaties against the sums owed to it under the Fidelity treaty. Set off of mutual debts and credits of insurers in receivership is controlled by Code § 38.2–1515(A):

> In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, the credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection B of this section.

The rationale underlying the principle of a set off is that "'[t]he demands must be due between the same parties, and in the same right.'" First National Bank of Waynesboro v. Johnson, 183 Va. 227, 237, 31 S.E.2d 581, 585 (1944). At the time Swiss Re

acquired the Integrated treaties, Fidelity was already in receivership. Any rights acquired by Swiss Re at that time were necessarily limited by the effect of that receivership, and, thus, were of a quality distinguishable from the obligations it owed under the Fidelity treaty. Accordingly, there is a lack of mutuality between the Fidelity treaty and the Integrated treaties, barring set off of the respective debts owed. A contrary holding would run counter to the express provision in the statute that debts owed by the insurer cannot be acquired for the purpose of obtaining a set off. Code § 38.2-1515(B)(2).

For these reasons, the decision of the Commission will be affirmed.

<u>Affirmed</u>.