**In the Matter of the Liquidation of IN-TEGRATED RESOURCES LIFE INSURANCE COMPANY,**

**Steven T. Foster, Deputy Receiver of Fidelity Bankers Life Insurance Company and Trustee of the Fidelity Bankers Life Insurance Company Trust, Appellant.**

**No. 95–1785.**

Supreme Court of Iowa.

April 23, 1997.

Frederick M. Haskins of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, Patrick H. Cantilo and Steven E. Adkins of Cantilo, Maisel & Hubbard, L.L.P., Austin, Texas, and Jeffrey L. Wood and Randolph N. Wisener of Cantilo, Maisel & Hubbard, L.L.P., Dallas, Texas, for appellant.

Ronald L. Anderson of Howes & Anderson, P.C., Des Moines, and Ida Wurczinger Draim of Wiley, Rein & Fielding, Washington, D.C., for appellee Integrated Resources Life Insurance Co.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

Two insurance companies in receivership—Integrated Resources Life Insurance Co. (Integrated) and Fidelity Bankers Life Insurance Co. (Fidelity)—dispute the impact of an assumption agreement executed between Integrated and its delegate, North American Reassurance (NARe). Integrated persuaded the district court that Fidelity's willingness to forward premiums to NARe meant that Fidelity thereby released Integrated from their mutual reinsurance obligations. The court's decision, however, erroneously confused industry custom pertaining to insurer/policyholder contracts with novation principles applicable to contracts between insurers. We therefore reverse the judgment of the district court and remand for entry of judgment for Fidelity.

I.  This case was submitted to the district court on extensive stipulated facts. Two discrete reinsurance arrangements are pertinent to this appeal.

*Integrated Treaties.*  Between 1982 and 1987, Integrated entered into six reinsurance treaties with Fidelity.[1]  Under these agreements, Fidelity ceded to Integrated (and Integrated accepted) certain risks arising under insurance policies issued by Fidelity.  In 1991, NARe became Integrated's delegate, assuming Integrated's interests and obligations on these treaties.  NARe so notified Fidelity's director of reinsurance, instructing that all reinsurance transactions under the Integrated treaties would henceforth be between NARe and Fidelity.  Fidelity thereafter submitted premium payments and claim documentation to NARe.

---

1. Reinsurance is "[a] contract that one insurer makes with another to protect the latter from a risk already assumed."  Black's Law Dictionary 1157 (5th ed. 1979); *see Epland v. Meade Ins. Agency Assocs.*, 545 N.W.2d 401, 406 (Minn.App. 1996) ("Where an insurance company (the insurer) sells to another (the reinsurer) the insurer's risks along with the premiums, it is called a 'reinsurance agreement.' ").

It appears undisputed that Fidelity viewed the acquisition with favor because NARe was financially more stable than Integrated. It is also undisputed that Fidelity never countersigned the assumption agreement, though requested to do so by Integrated and NARe. The record reveals that the assumption agreement bears the signatures of authorized officers from Integrated and NARe, but not Fidelity.

*PLICO Transaction.* Meanwhile, in 1990, Fidelity sold a block of its life insurance business to Protective Life Insurance Co. (PLICO). As a condition of the sale, PLICO required a third-party "stop loss" guarantor for mortality risks on the policies purchased. NARe stepped in, agreeing to indemnify PLICO on excess mortality provided that Fidelity indemnify NARe.

II. The arrangements just described placed NARe simultaneously in the role of debtor and creditor to Fidelity. NARe, as debtor, was obliged to reimburse Fidelity on claims paid under the treaties acquired from Integrated. NARe, as creditor, was entitled to indemnification from Fidelity for payments made to PLICO.

These dual roles placed NARe at the intersection of the current controversy between Integrated and Fidelity. When policyholder claims arose under Fidelity's treaties with Integrated, Fidelity looked first to NARe for payment. NARe declined to pay, claiming a setoff for payments owed by Fidelity under the PLICO treaty. Fidelity meanwhile had gone into receivership. NARe asserted that Virginia law governing the PLICO transaction authorized setoff for mutual debts and credits between an insurer in receivership and another party.

Fidelity then looked to Integrated for payment. Because Integrated was by then in liquidation, compliance with Iowa Code chapter 507C (1993) was required. Fidelity filed a proof of claim with Integrated's liquidator in the amount of $1,146,962.33. *See* Iowa Code §§ 507C.35, .36. After the liquidator denied Fidelity's claim, Fidelity objected in writing. *See id.* § 507C.39(1). The liquidator, as required under section 507C.39(2), applied to the district court for hearing.

Fidelity argued in the district court that Integrated remained obligated for reinsured losses unpaid by NARe because "[n]either the deputy receiver nor any appointed agent ever signed the assumption agreement or otherwise agreed to allow Integrated to be relieved of its obligations." Integrated countered with two independent defenses: (1) NARe assumed the Integrated treaties with Fidelity's knowledge, and Fidelity's subsequent payments of premiums to NARe thereby released Integrated from any obligation under the treaties; and (2) Fidelity's outstanding obligation to NARe on the PLICO transaction offset any sums it could claim under the Integrated treaties.

■ In an opinion that adopted verbatim the proposed findings of fact and conclusions of law submitted by Integrated's counsel,[2] the district court ruled that Fidelity—through its course of conduct in paying premiums and submitting claims to NARe—released Integrated from all post-assumption obligations under the Integrated treaties. On the question of setoff, the court ruled that under Virginia law NARe's setoff was presumptively valid. This appeal by Steven T. Foster, deputy receiver for Fidelity, followed.

■ III. Because this is an equitable proceeding arising out of a claim to assets of an Iowa insurance company in liquidation, *see* Iowa Code § 507C.1(d), our review is de novo. Iowa R.App. P. 4. We give weight to the trial court's findings, but are not bound by them. *In re Receivership of Mt. Pleasant Bank & Trust Co.,* 526 N.W.2d 549, 554 (Iowa 1995); Iowa R.App. P. 14(f)(7).

■ IV. We turn first to Integrated's defense of setoff, which has been the subject of companion litigation in Virginia. In *Swiss Re Life Co. v. Gross,* 253 Va. 139, 479 S.E.2d 857, 862 (1997), the Virginia Supreme Court observed that NARe (now known as Swiss Re) entered into the PLICO treaty before

---

**2.** We view this practice with disfavor because it obscures the independent and disinterested insight of the trial judge whose decision is on review. *Care Initiatives v. Board of Review,* 500 N.W.2d 14, 16 (Iowa 1993); *Kroblin v. RDR Motels, Inc.,* 347 N.W.2d 430, 434–36 (Iowa 1984); *In re Marriage of Siglin,* 555 N.W.2d 846, 848–49 (Iowa App.1996).

Fidelity went into receivership, but acquired the Integrated treaties *after* Fidelity was in receivership. Citing Virginia Code section 38.2–1515(A), applicable in 1991, the court ruled that this lack of mutuality between the treaties bars setoff of the respective debts owed. *Id.* A contrary holding, the court ruled, "would run counter to the express provision in the statute that debts owed by the insurer cannot be acquired for the purpose of obtaining a setoff." *Id.*

The *Swiss Re* decision defeats the defense of setoff urged here by Integrated and requires us to reverse the district court's conclusion to the contrary.[3]

V. The principal question on appeal is whether Integrated's contractual obligations to Fidelity were extinguished when NARe assumed the Integrated treaties and Fidelity commenced doing business with the new reinsurer. The district court viewed Fidelity's course of conduct as determinative. Its decision rested in large measure on the principles underlying a 1991 draft version of the National Association of Insurance Commissioners' Assumption Reinsurance Model Act, from which it quoted:

> Payment of the next premium to the assuming company or written communication regarding this contract of insurance to the assuming company by the policyholder such as change of address, change of beneficiary, etc., shall be deemed to indicate the policyholder's acceptance of the transfer to the assuming insurer and novation shall be deemed to be effected.

■ Fidelity argues on appeal that the court's reliance on the quoted draft, and its underlying policies, is misplaced. We agree. The model act (which has not been adopted in Iowa) plainly pertains to rights and obligations of individual *policyholders;* this is evidenced from the references to "change of address" and "change of beneficiary." It seeks to regulate the transfer of coverage between insurance companies by establishing notice and disclosure requirements which alert policyholders that their correspondence

with the new company will effect a consent to novation. *Cf. Epland v. Meade Ins. Agency Assocs.,* 545 N.W.2d 401, 406 (Minn.App. 1996) ("In creating an assumption agreement ... the insurer may not transfer its liability to another company and compel its policyholders to accept the new company as their insurer without the policyholders' consent."). Such mechanical means of facilitating change is, of course, crucial where thousands (if not millions) of policyholders are involved. The act clearly has no application to complex, arm's length transactions between insurance companies.

The court should have instead applied well-established novation principles. The Restatement (Second) of Contracts section 280 defines novation as "a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." *Accord Klipp v. Iowa Grain Indem. Fund Bd.,* 502 N.W.2d 9, 11 (Iowa 1993). We said in *Klipp* that novation is never presumed; rather, the party asserting it must establish its elements by clear and satisfactory evidence. *Id.* "[T]he claimant must show (1) a previous valid obligation, (2) agreement of all parties to the new contract, (3) extinguishment of the old contract, and (4) validity of the new contract." *Id.; accord Trostel v. American Life & Cas. Ins. Co.,* 92 F.3d 736, 740 (8th Cir.1996); *In re Estate of Eitzen,* 231 Iowa 1169, 1175, 3 N.W.2d 546, 549 (1942).

■ Integrated, who bears the burden of proof on the novation issue, has failed under this record to establish proof of elements (2) and (3). The mere fact that a new contract obligates a third party to assume the financial obligation of the debtor will not alone support a presumption that the creditor accepts the new debtor and releases the old one. *Wade & Wade v. Central Broadcasting Co.,* 227 Iowa 422, 426, 288 N.W. 439, 441 (1939). A noted commentator has aptly stated:

> Many a debtor wishes that by such an expression [of an intention to delegate] he

---

**3.** Following submission of the appeal in this court, Integrated's counsel forwarded a copy of *Swiss Re* with the suggestion that its holding moots the present appeal. We are persuaded by

Fidelity's response, however, that any payment made by NARe (as Integrated's delegate) pursuant to the *Swiss Re* holding would only partially satisfy the claim made by Fidelity here.

could get rid of his debts.... In spite of such an "assignment," the debtor's duty remains absolutely unchanged. The performance required by a duty can often be delegated; but by such a delegation the duty itself is not escaped.

4 Arthur L. Corbin, *Corbin on Contracts* § 866 (1951); *see B & H Apartments Partnership v. Tharp,* 466 N.W.2d 694, 696 (Iowa App.1990) (parties who delegate duties under a contract "may not avoid their contractual obligation without a contract to the contrary, *i.e.,* a novation"). Fidelity's act of forwarding premium payments to NARe at best reveals evidence of an "accord." *See Sergeant v. Leonard,* 312 N.W.2d 541, 545 (Iowa 1981) ("With an accord the parties intend that the original contract obligation remains viable but that it is suspended pending performance by the debtor of the modification.").

The fact that Fidelity did not countersign the assumption agreement when asked to do so furnishes persuasive proof of Fidelity's intent to preserve its contractual ties to Integrated. Indeed, the cover letter accompanying the request for countersignature makes no mention of novation, and plainly reveals an evolving transfer of the reinsurance arrangement between Integrated and NARe. Thus not only has Integrated failed to prove that Fidelity agreed to a novation, clear and satisfactory evidence to the contrary establishes that, from Fidelity's perspective, no novation was contemplated. Even if Integrated sought a novation—a matter not supported by this record—it was never obtained. In the absence of a novation, Integrated remains obligated to Fidelity on the Integrated treaties.

We reverse the judgment of the district court and remand for entry of judgment on Fidelity's claim, including interest.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**