# United States Court of Appeals

### FOR THE EIGHTH CIRCUIT

_____

No. 95-3666
_____

Anne C. Trostel; Harry A. Holman,   *
Jr.; H. L. Van Metre; Charles H.    *
Van Metre; Dorothy Hurley;         *
Terrance M. Hurley, Cmdr.; Carol   *
Sabey, Mrs.;                      *
                              *
       Plaintiffs –         *
       Appellants          *
                              *
Norwest Bank Fort Collins, N.A.    *
                        *  Appeal from the United States
       Trustee - Appellant     *  District Court for the Southern
                        *  District of Iowa.
v.                         *
                              *
American Life & Casualty       *
Insurance Company;           *
                              *
       Defendant - Appellee    *
                              *
Hawkeye Bank of Des Moines     *
                              *
       Movant             *
                              *

_____

Submitted: November 18, 1997
Filed: January 15, 1998
_____

Before BOWMAN, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

    This case involving a gold clause in a real estate lease comes before us on remand from the Supreme Court for further consideration in light of Congressional action subsequent to our decision of August 14, 1996. Trostel v. American Life & Cas. Ins. Co., 92 F.3d 736 (8th Cir. 1996), vacated, 117 S.Ct. 939 (1997). We were asked to consider the impact of a statutory amendment which went into effect on September 30, 1996, but before oral argument Congress acted again to eliminate the language added in 1996. The parties have now briefed and argued their conflicting views about the possible impact of these legislative changes on this litigation.


    The real estate lease covers a commercial building in downtown Des Moines, Iowa. It was originally entered into in 1917 to run for ninety nine years. The annual rent for the final forty five years was set at $18,000, and the lessor was given the option to demand payment in gold coin as a protection against future inflation. See Trostel, 92 F.3d at 738. During the lease period public policy changed in regard to gold. Congress declared in 1933 that gold clauses were against public policy and were therefore dischargeable dollar for dollar in United States currency. Joint Resolution of June 5, 1933, 48 Stat. 112, 113 (1933) (formerly codified at 31 U.S.C. § 463) (codified as amended at 31 U.S.C. § 5118(d)(2)). More than forty years later the policy changed once more. On October 28, 1977, Congress amended the underlying statute to make gold clauses enforceable again if they were part of an obligation issued after October 27, 1977. Act of October 28, 1977, Pub. L. No. 95-147, § 4(c), 91 Stat. 1227, 1229 (codified as amended at 31 U.S.C. § 5118(d)(2)).

    The lease was ultimately assigned in 1990 to American Life and Casualty Insurance Company (American Life), and in 1993 the lessors demanded payment of the rental obligation in gold coin. American Life refused, and the lessors sought a

declaratory judgment to enforce their demand. The district court granted summary judgment to American Life. We reversed after determining that the gold clause was enforceable under the 1977 statutory amendment because in the 1990 assignment American Life had assumed all obligations of the original lease. <u>Trostel</u>, 92 F.3d at 740-41.

Shortly thereafter Congress amended the underlying statute by adding a provision to the otherwise unrelated Economic Growth and Regulatory Paperwork Reduction Act of 1996. With the new amendment the statute read in pertinent part:

> An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977. **This paragraph shall apply to any obligation issued on or before October 27, 1977, notwithstanding any assignment or novation of such obligation after October 27, 1977, unless all parties to the assignment or novation specifically agree to include a gold clause in the new agreement.**

31 U.S.C. § 5118(d)(2) (1996 amendment highlighted).[1]

The Supreme Court then granted certiorari and remanded the case to this court "for further consideration in light of the Economic Growth and Regulatory Paperwork Reduction Act of 1996, P.L. No. 104-208, Sec. 2609." 117 S.Ct. 939 (1997). A briefing schedule was established, stayed at request of both sides to permit discussions of possible settlement, and then reinstated with modified dates. Before oral argument could be heard, Congress acted again. This time it eliminated the provision it had

---

[1]The amendment also provided that it would not apply to gold clause obligations finally adjudicated before its passage.

added to the gold clause statute in 1996. Public Law 105-61, § 641. The legislation, signed into law on October 10, 1997, stated that:

> [s]ection 5118(d)(2) of title 31 United States Code, is amended by striking "This paragraph shall" and all that follows through the end of the paragraph.

Oral argument was then postponed to permit additional briefing on the implications of the new legislative action.[2]

The parties disagree as to the significance of the amendments. American Life asserts that the gold clause in the lease cannot be enforced because the 1996 amendment was written to be retroactive and the parties did not "specifically agree" to include the gold clause in the 1990 assignment. It therefore is only obligated to pay the lease amount of $18,000 per year on the building. It says the 1997 amendment has no effect here because it is not retroactive, citing Landgraf v. U.S.I. Film Products, 114 S.Ct. 1483 (1994). The lessors argue that the gold clause in this lease continues to have effect under either statute. They contend that the 1997 amendment is retroactive, making the 1996 amendment now irrelevant. They also say that even if the 1996 amendment applies to this lease, the gold clause is enforceable because American Life explicitly agreed in the assignment to be bound by "all of the terms and conditions" of the 1917 lease, and one of the terms of that lease was the gold clause.

American Life argues that the resolution of this case is a simple matter of applying the Landgraf holding which requires a clear expression of Congressional intent before a statute will be given retroactive effect. It is unable to cite a case, however,

---

[2]The parties have sought permission to file post-argument briefs addressing retroactivity issues, and their motions are granted.

where the presumption was employed in a situation similar to the one here.[3] The 1996 amendment says that it "shall apply to any obligation issued on or before October 27, 1977 . . .," thus indicating on its face a retroactive intent. See Landgraf, 114 S.Ct. 1483. The 1997 enactment simply states that the prior amendment is stricken. It does not use the type of language normally associated with retroactive effect. See id. Its apparent intent, however, is to eliminate the effect of the previous year's enactment, and to apply it in that way here would not implicate the policy interests underlying the presumption against retroactivity. This policy "has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." Id. at 1500. As to the parties in this case, the interests of "fair notice, reasonable reliance and settled expectations," id. at 1499, would weigh in favor of interpreting the 1997 amendment to return the law to its former state as it existed in 1990 at the time of the assignment to American Life.

The sequence of the legislative amendments and the involvement of these parties in that process are part of the full context of this case.[4] Each amendment reflected a desire to influence its outcome, and each was passed as a small item in an otherwise unrelated statute.[5] The 1997 amendment provided for the elimination of the entire 1996 amendment, and there is nothing to suggest that the language was carefully crafted to prevent its application here.

---

[3]The statutory background in Landgraf was strikingly different from the one here. The statutory provisions at issue there were part of fundamental changes in civil rights law and resulted from a lengthy deliberative process. See id. at 1491, 1493. After Congress considered and rejected a version of the Civil Rights Act which had express retroactive language, it ultimately enacted a statute with none. See id. at 1491-92.

[4]Initiatives by the parties in respect to the legislation were discussed at oral argument.

[5]The 1997 repeal was a small part of a voluminous act entitled "Treasury, Postal Service and General Government Appropriations, 1998."

If a requirement of explicit statutory language commanding retroactivity is necessary for the 1997 amendment to have an effect on this case, however, then we must consider the effect of the 1996 amendment as controlling. The 1996 amendment required that a gold clause be specifically agreed to in order to be effective. The 1990 Warranty Assignment and Assumption agreement which controlled the assignment of the lease to American Life contains a reference to the original lease and provides that the assignor transfers the leasehold interest and that American Life, the assignee:

> hereby accepts, assumes and agrees to be bound by all of the terms and conditions to be kept, observed, and performed by the lessee in said lease, as amended above described, from and after August 1, 1990. . . .

We previously held that this assignment amounted to a novation. This meant that the gold clause was enforceable under the 1977 statute since under Iowa law the 1990 novation amounted to a new obligation issued after the key statutory date. See Klipp v. Iowa Grain Indemnity Fund Board, 502 N.W.2d 9, 11 (Iowa 1993); Eitzen's Estate v. Lauman, 3 N.W.2d 546, 549-50 (Iowa 1942). Under the 1996 amendment a gold clause is not enforceable "notwithstanding any assignment or novation" of a contract including such a clause unless the parties "specifically agree to include a gold clause in the new agreement." 31 U.S.C. § 5118(d)(2). The substituted contract must therefore demonstrate explicit intent to include a gold clause in the new obligation or it is not enforceable.

The substituted contract in this case satisfies the 1996 statutory requirement because it specifically included each clause of the original contract as a new term. American Life expressly assumed "*all* of the terms and conditions" (emphasis added) of the 1917 contract, and the gold clause in that contract was enforceable under the statute as it existed at the time of the 1990 assignment and as amended in 1996. Under

Iowa law an assignment is a contract subject to the traditional rules of construction and where unambiguous, its words will be interpreted according to their common meaning. Broyles v. Iowa Dep't of Soc. Services, 305 N.W.2d 718, 721-22 (Iowa 1981) (citing 6A C.J.S. Assignments § 2 (1975); Kinney v. Capitol-Strauss, Inc., 207 N.W.2d 574, 576-77 (Iowa 1973)). The terms of this assignment reveal the parties' intent to agree to include all original lease clauses, including the gold clause, in the new agreement created in 1990, thus satisfying the requirements of the 1996 amendment.

American Life claims that even if it specifically agreed to include the gold clause, the lessors did not. The statutory requirement is not satisfied unless "all parties" to the contract have agreed. American Life argues the lessors did not even realize that they could demand payment under the gold clause until 1991. The original lessor agreed in 1917 to all future assignments of the lease, however, and thus there was no need for them to agree to the gold clause contemporaneously with the 1990 novation. The statute only requires that all parties specifically agree to include a gold clause, not that all parties contemporaneously agree to include the clause. The original lessor specifically agreed to all clauses in the 1917 lease, including the gold clause, as well as to all future assignments, and lessors are the successors in interest. This is sufficient to satisfy the specific agreement requirement.

After reviewing the pertinent legislation subsequent to our earlier decision and the arguments raised by the parties, we conclude that the gold clause in this lease is enforceable and we reinstate our prior decision. Accordingly, we remand the case to the district court for further proceedings consistent with this opinion and Trostel v. American Life & Cas. Ins. Co., 92 F.3d 736 (8th Cir. 1996).[6]

---

[6] This resolution makes it unnecessary to consider the lessors' arguments that the 1996 amendment is beyond the power of Congress under the Commerce Clause or that the lease is commercially impracticable or voidable because of a failure of a fundamental condition.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT