**EMMET COUNTY BOARD OF SUPERVISORS, Appellant,**

v.

**William RIDOUT, Trustee of the Erma Anderson Testamentary Trust for Lawrence Anderson, Deceased, Appellee.**

No. 04–0254.

Supreme Court of Iowa.

Feb. 25, 2005.

Gregory R. Brown, Christine B. Long, and Timothy S. Eckley of Duncan, Green, Brown & Langeness, P.C., Des Moines, and Peter C. Hart, Specially Appointed Emmet County Attorney, Emmetsburg, for appellant.

James D. Hart, Estherville, for appellee.

WIGGINS, Justice.

We must decide whether there is statutory or common-law authority supporting a county's claim for reimbursement for payments made on behalf of one of its residents for community-based mental health services under Iowa Code chapter 225C (2001), and whether the five-year statute of limitations precludes the county from re-

covering any payments made on behalf of one of its residents for inpatient mental health services at a state hospital under Iowa Code chapter 230. Because we agree with the district court that there is neither statutory nor common-law authority supporting the county's claim for reimbursement for payments made for community-based mental health services under chapter 225C, and the statute of limitations bars the county from recovering any payments made on this resident's behalf for inpatient mental health services at a state hospital under chapter 230, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

The parties submitted this case to the district court on stipulated facts. Lawrence Anderson, a resident of Emmet County, was born on June 3, 1939. At some point in time, Anderson was diagnosed with incurable schizophrenia and bipolar disorder. In connection with Emmet County's obligation to provide support for a person committed to a state hospital, it paid $9,412.97 in mental health benefits on Anderson's behalf for his care at the Cherokee Mental Health Institute from January 1, 1968 to May 6, 1970 and $6,834.99 on Anderson's behalf for his care from August 4, 1970 to June 3, 1972. The county maintained an account ledger indicating Anderson or the persons legally liable for Anderson's support were indebted to the county for the funds it advanced for Anderson's care at the Cherokee Mental Health Institute. Anderson's parents paid the county a small amount in a compromise settlement that reduced the account ledger to zero.

From April 5, 1973 through August 8, 1984, the county paid $25,518.68 for mental health benefits on Anderson's behalf. Of this total, it paid $20,274.07 for inpatient treatment provided to Anderson at the Cherokee Mental Health Institute. Neither Anderson nor his parents entered into a compromise settlement for these payments. Instead, the county chose to maintain an account ledger regarding these benefits.

Anderson's father died on January 16, 1982. Anderson's mother died on April 6, 1987. Pursuant to her will, her estate passed equally to her three sons. Specifically, as to Anderson's share, the will created a trust and provided:

> Such of the income and corpus as needed shall be applied or distributed by said trustee, in cash or in kind, for the support, education and general welfare of my son, Lawrence F. Anderson. Said distribution shall be made to those persons and in such manner and amounts as said trustee, in its unrestricted discretion, believes will fulfill the purposes of this trust, regardless of the existence of other funds available for these purposes.

The will also contained a spendthrift clause, which stated the "interest of the beneficiary ... shall not be seized by creditors or said beneficiary or by anyone, by attachment, garnishment, execution or otherwise."

The county made no payments on Anderson's behalf from August 8, 1984 through August 5, 1993. On August 5, 1993, the county charged $7,637.22 to Anderson's account ledger. On March 15, 1994, the county charged an additional $2,527.57 to the account ledger. The record does not establish why the county entered these charges on the ledger. The record does establish the last day Anderson received inpatient services at the Cherokee Mental Health Institute was October 10, 1984. From March 15, 1994 through June of 1996, the county paid an additional $7,814.67 in community-based

outpatient mental health benefits for Anderson.

On June 25, 1996, Anderson and his trustee made an application to the county for additional community-based benefits. Included in the application was a disclosure that Anderson had financial resources available to him through the trust totaling $110,942.63. By a notice of decision dated August 1, 1996, the county denied the application because Anderson had resources available to him in excess of $2000 to cover the cost of the benefits requested. Anderson and his trustee responded to the notice of decision by filing a request for a conciliation process regarding the denial of his claim. The trustee and the county reached an agreement whereby the county authorized Anderson to receive partial payments for community-based services. The county memorialized this agreement in a written notice of decision stating the county would pay one-half of the cost of supervised apartment services and community support services with Anderson being responsible for paying $180 per month for his share of the cost of the services. The county later terminated its contribution towards community-based services on the basis Anderson was no longer receiving them.

On July 12, 1997, Anderson reapplied asking the county to continue to fund community-based services. The county approved this request on July 29, 1997. Until his death, Anderson annually reapplied to the county to fund community-based services. From July 1996 through the date of Anderson's death, the trust created by Anderson's parents paid $17,020.81 for community-based services. At the time of Anderson's death, his trust assets had a fair market value of $123,713.57. No estate was opened because there were insufficient assets to require the administration of an estate.

On November 21, 2002, the board of supervisors filed a claim in probate against the Erma Anderson Testamentary Trust for Lawrence F. Anderson, deceased, for $60,687.89. This amount represented $20,274.07 for payments made by the county for inpatient services provided to Anderson from April 5, 1973 through October 10, 1984, and $40,413.82 for payments made by the county for community-based services from August 5, 1993 until Anderson's death on April 13, 2002.

The district court denied the county's claim in probate. The district court found there was neither statutory nor common-law authority supporting the county's claim for reimbursement for payments on Anderson's behalf for community-based mental health services under Iowa Code chapter 225C, and the statute of limitations precluded the county from recovering any of the payments made on Anderson's behalf for inpatient mental health services at a state hospital under Iowa Code chapter 230.

## II. Issues.

In this appeal we must decide (1) whether statutory or common-law authority exists entitling the county to reimbursement from the trust for the sums it paid on Anderson's behalf for community-based mental health services under Iowa Code chapter 225C; and (2) whether the statute of limitations precludes the county from recovering from the trust any payments it made on Anderson's behalf for inpatient mental health services at a state hospital under Iowa Code chapter 230.

## III. Scope of Review.

██ Because the district court tried this contested claim at law, our review is for the correction of errors at law. Iowa R.App. P. 6.4; *In re Dodge's Estate*, 281 N.W.2d 447, 449 (Iowa 1979). Regarding

the issue of substantial evidence, we have stated:

> When a party challenges a district court's ruling for lack of substantial evidence, we view the evidence in the light most favorable to the judgment. When a reasonable mind would accept the evidence as adequate to reach a conclusion, the evidence is substantial. Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding. However, neither the district court's conclusions of law nor its application of its legal conclusions is binding on appeal.

*Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004) (citations omitted).

### IV. Analysis.

#### *Payments Made Pursuant to Iowa Code Chapter 225C*

■ The services provided to Anderson after October 10, 1984 were community-based mental health services governed by Iowa Code chapter 225C. The county concedes chapter 225C does not contain any provisions authorizing the county to seek reimbursement for the payments it made under chapter 225C. We have long held the common law of this state does not require a recipient of public assistance to reimburse the provider for the assistance received by the recipient. *State v. Brooks*, 412 N.W.2d 613, 614 (Iowa 1987). Any assistance furnished by the county is considered a charity to which the recipient is entitled and the county is obligated to provide. *In re Estate of Frentress*, 249 Iowa 783, 786, 89 N.W.2d 367, 368 (1958). Although there is neither statutory nor common-law authority for the county to seek reimbursement for the payments it made for community-based mental health services under chapter 225C, the

county argues it is entitled to reimbursement for the payments it made on Anderson's behalf because (1) the trust created by Anderson's mother's will was a discretionary support trust; (2) the trust entered into a contract with the county to reimburse the county; and (3) the home rule act allows the county to seek reimbursement for chapter 225C expenses.

■ *Discretionary Support Trust Claim.* The district court found and both parties agree that the trust is a discretionary support trust. A settlor creates a discretionary support trust when the purpose of the trust is to furnish the beneficiary with support, and the trustee has the discretion to pay the income or principal to the beneficiary, as the trustee deems necessary for the support of the beneficiary. *In re Barkema Trust*, 690 N.W.2d 50, 54 (Iowa 2004). The county argues that because our court of appeals held that a county could consider the assets of a discretionary support trust to determine a beneficiary's eligibility for county funding of mental health services, the county should be able to reach those same assets to reimburse it for the funds it expended on Anderson's behalf for community-based mental health services under chapter 225C. *See Strojek v. Hardin County Bd. of Supervisors*, 602 N.W.2d 566, 571 (Iowa Ct.App.1999) (holding the assets of a discretionary support trust could be considered when determining a mentally handicapped beneficiary's eligibility for living expenses).

■ Generally, in a discretionary support trust,

> the beneficiary has a right that the trustee pay him the amount which in the exercise of reasonable discretion is needed for his support ...; and the beneficiary can transfer this interest or his

creditors may reach it, unless it is protected by a spendthrift clause.

*Barkema,* 690 N.W.2d at 54 (citations omitted). Under certain circumstances, even the assets of a trust protected by a spendthrift clause, such as the trust in the present case, may be reached to satisfy and enforce a claim against the beneficiary. Restatement (Second) of Trusts, section 157 states:

> Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
>
> . . .
>
> (b) for necessary services rendered to the beneficiary or necessary supplies furnished to him;
>
> (c) for services rendered and materials furnished which preserve or benefit the interest of the beneficiary.

Restatement (Second) of Trusts § 157, at 328 (1959).

We have not had the occasion to adopt Restatement (Second) of Trusts section 157(c)'s standard. We have adopted section 157(b)'s standard with qualifications. Those qualifications are:

> (1) [T]he claim is for necessary goods or services, not officiously rendered, which the settlor intended to be provided the beneficiary by trust funds; and (2) the withholding of payment for the goods and services is not properly within the discretion granted the trustee by the instrument, before a creditor's claim may be enforced against the trustee of a support trust subject to a spendthrift clause.

*In re Dodge's Estate,* 281 N.W.2d at 451.

■ In addressing the county's argument, we are not required to decide whether to adopt the standard in section 157(c), or if the standard of section 157(b), with the qualifications as adopted by this court, applies to the present case because section 157 is inapplicable to the county's claim for reimbursement of chapter 225C expenses. Section 157 only allows a creditor to reach the assets of a spendthrift trust "in satisfaction of an *enforceable claim* against the beneficiary." Restatement (Second) of Trusts § 157, at 328 (emphasis added). We have determined the county has neither a statutory nor a common-law right to recover chapter 225C expenses against Anderson or any other person who may be legally responsible for Anderson's expenses. Without the right to recover the payments it made on Anderson's behalf, the county does not have an *enforceable claim* against the trust, even though the county may have considered the trust assets to determine Anderson's eligibility for community-based mental health services under chapter 225C.

■ *Contract Claim.* The county also argues the trust agreed to reimburse the county for chapter 225C expenses when the county agreed to pay part of the cost of community-based services. The district court considered this argument and found the parties did not enter into a contract requiring reimbursement by the trust.

Our review of the record reveals that when Anderson made a request for community-based services, he disclosed to the county in his application that the trust had $110,942.63 in assets available for Anderson's support. The county denied Anderson any services under chapter 225C because Anderson had resources in excess of $2000 available to him at the time of the application. Anderson appealed the initial non-eligibility finding by filing a request for a conciliation process. After Anderson filed the request for conciliation, the county reversed its original decision and in a written notice of decision agreed to pay part of the costs for community-based

mental health services for Anderson as long as Anderson's trust was willing to pay for part of the services. This arrangement continued through a series of written notices of decision. Each time the county agreed to pay for services for Anderson, the trust was required to pay for part of the services. Not one of the notices of decision contained any language requiring the trust to reimburse the county for the payments it made.

Substantial evidence exists in the record supporting the findings of the district court. The district court was correct when it determined the parties did not enter into a contract requiring reimbursement by the trust for chapter 225C expenses advanced by the county for community-based mental health services.

■ *Home Rule Claim.* The county argues the implementation of home rule in Iowa Code chapter 331 supports its argument that the county is entitled to seek reimbursement for the sums it advanced under Iowa Code chapter 225C. The county contends section 331.756(47), which requires the county attorney to "[c]arry out duties relating to the collection of the costs for the care, treatment, and support of persons with mental illness as provided in sections 230.25 and 230.27," gives it the authority to seek reimbursement for payments it made under chapter 225C. *See* Iowa Code § 331.756(47). The county's reliance on section 331.756(47) is misplaced. By its clear and express terms, section 331.756(47) does not create a right to collect any payments advanced on behalf of a mentally ill person but merely lists the duties of a county attorney under the implementation of home rule. Therefore, Iowa Code chapter 331 does not grant the county any authority to collect payments made on Anderson's behalf for community-based mental health services under chapter 225C.

For these reasons, we agree with the district court that the county cannot make a claim against the trust for reimbursement of the expenses it paid on behalf of Anderson for mental health community-based services under Iowa Code chapter 225C.

### Payments Made Pursuant to Iowa Code Chapter 230

Prior to October 10, 1984, Anderson received inpatient mental health services at the Cherokee Mental Health Institute. When a person is committed to a state mental health institute, the county is responsible to reimburse the State for the necessary and legal costs and expenses of the commitment. Iowa Code § 230.1(1)(*a*). Although the county is responsible to reimburse the State for the costs and expenses of a patient's care and treatment at a state mental health institute, the patient or a person legally liable for the patient's support remains liable for those expenses. *Id.* § 230.15. Sections 230.25 through 230.27 contain the procedures for the county to obtain reimbursement from the patient or a person legally liable for the patient's support.

■ Prior to beginning any collection efforts, the board of supervisors is required to conduct an investigation to determine if the patient or a person legally liable for the patient's support is presently able to pay the expenses of the patient's hospitalization. *Id.* § 230.25(1). If the board finds the patient or a person legally liable for the patient's support is presently able to pay the expenses of the patient's hospitalization, the auditor shall keep an index of the names of those persons presently able to pay the expenses, together with an accurate account of the charges. *Id.* § 230.26. After the board of supervisors makes its determination, and the auditor has indexed the names and charges,

the board of supervisors can then turn the matter over to the county attorney for collection. *Id.* § 230.27. If a patient dies prior to collection, the county can make a claim in the estate against the person who is receiving or has received assistance under chapter 230. *Id.* § 230.30. Because the legislature included specific collection provisions in chapter 230, we conclude there is statutory authority for the county to recover any payments it made on Anderson's behalf for inpatient treatment he received at the Cherokee Mental Health Institute. The district court, however, denied the county the right of reimbursement concluding the statute of limitations barred the county from seeking reimbursement, and the county failed to follow the applicable procedures of chapter 230 in seeking reimbursement.

■ *Statute of Limitations.* Iowa Code sections 230.15 and 230.25 through 230.27 create an open account for payments made by the county on behalf of a patient under chapter 230 between the patient and a person legally liable for the patient's support and the county. *See Scott County v. Townsley,* 174 Iowa 192, 194–95, 156 N.W. 291, 292 (1916). A note or other written agreement between the parties does not evidence the debt created by chapter 230; therefore, the five-year statute of limitations governing unwritten contracts in Iowa Code section 614.1(4) applies to the county's claim. *Swartz v. Bly,* 183 N.W.2d 733, 738 (Iowa 1971). A cause of action based on an open account "shall be deemed to have accrued on the date of the last item therein. . . ." Iowa Code § 614.5; *Townsley,* 174 Iowa at 194–95, 156 N.W. at 292.

The last date Anderson received inpatient mental health services under chapter 230 was October 10, 1984. There are, however, entries on the account ledger indicating the county paid for services for Anderson as late as March 15, 1994. Even if we assume the March 15, 1994 entry was for inpatient mental health services provided by Iowa Code chapter 230, the county filed its claim against the trust more than five years after the date of the last item on the account ledger. The failure of the county to file a timely claim bars the county from proceeding against the trust.

■ The county argues that the date of the last item on the open account was on April 8, 2002; thus, its cause of action did not accrue until this date. We disagree. The county made the April 8 payment for community-based mental health services provided Anderson under chapter 225C. Although a book record evidences an account in its technical legal meaning, in its broader sense "an account is equivalent to a 'claim' or 'demand' based upon a transaction creating a debtor-creditor relation." *In re Stratman's Estate,* 231 Iowa 480, 489, 1 N.W.2d 636, 643 (1942). The payments on Anderson's behalf for community-based mental health services on April 8, 2002 under chapter 225C did not create a debtor-creditor relation between the county and the trust because any payments made by the county pursuant to chapter 225C are not recoverable by the county. Thus, the March 15, 1994 item is the last item arguably creating a debtor-creditor relation that the county could have legitimately entered on the account ledger. More than five years transpired between the March 15, 1994 entry and the filing of the claim

■ The county also argues the statute of limitations did not begin to run until Anderson's death. The county relies on *In re Sadler's Estate,* 73 S.D. 56, 38 N.W.2d 879 (1949), as authority for its argument. *Sadler* is distinguishable because the statutory scheme in South Dakota for the recovery of payments made by a county on behalf of a person with mental illness is

significantly different from the statutory scheme found in Iowa Code chapter 230. As far back as 1916, this court has held that under Iowa's statutory scheme a county must commence its cause of action for reimbursement of payments made by it on behalf of one of its residents committed to a state hospital within five years from the last item on the account. *Townsley,* 174 Iowa at 194–95, 156 N.W. at 292. We see no reason to abandon this authority when the county makes a claim in probate against a third party, rather than against the estate of the person receiving or who has received assistance under chapter 230.[1]

 Lastly, the county argues Anderson's June 25, 1996 application for benefits constituted a novation or revival of the debt for all services provided to the county to Anderson prior to that date. To prove a novation, the county must establish its elements by clear and satisfactory evidence. *In re Integrated Res. Life Ins. Co.,* 562 N.W.2d 179, 182 (Iowa 1997). The elements of a novation are "(1) a previous valid obligation; (2) agreement of all parties to the new contract; (3) extinguishment of the old contract; and (4) validity of the new contract." *Id.* (citations omitted).

The district court addressed this issue and concluded:

> More specifically, as stated in the findings of fact, there is no evidence in the record to suggest [the parties] discussed any prior agreement between the county and Larry and/or the trust to reimburse

it for services previously provided. Moreover, the county has failed to come forward with any proof to establish that the trust and the county agreed to extinguish any old contract and entered into a new contract, beyond the trust paying a portion of Larry's community-based services. In the absence of such proof, the court concludes that the county has failed to establish the existence of a novation in this case.

On our review of the record, we agree with the district court that the county has failed to establish by clear and satisfactory evidence a novation occurred reviving the debt for payments it made on Anderson's behalf for inpatient mental health services under chapter 230.

We need not address the issue as to whether the county followed the applicable procedures found in chapter 230 because we agree with the district court that the statute of limitations bars the county's claim for reimbursement under chapter 230.

## V. Disposition.

We affirm the judgment of the district court because we agree with the district court that there is neither statutory nor common-law authority supporting the county's claim for reimbursement for payments made on Anderson's behalf for community-based mental health services under Iowa Code chapter 225C, and the statute of limitations bars the county from recovering any payments made on Anderson's

---

1. Iowa Code section 230.30 provides:
 On the death of a person receiving or who has received assistance under the provisions of this chapter, and whom the board has previously found, under section 230.25, is able to pay there shall be allowed against the estate of such decedent a claim of the sixth class for that portion of the total amount paid for that person's care which exceeds the total amount of all claims of the

 first through the fifth classes, inclusive, as defined in section 633.425, which are allowed against that estate.
 We do not have to decide the effect of this section on the statute of limitations because the county made the claim against the trust, not against the estate of the person receiving or who has received assistance under chapter 230.

behalf for inpatient mental health services at a state hospital under Iowa Code chapter 230.

**AFFIRMED.**