JUSTICE COMPTON
delivered the opinion of the Court.
In this appeal of right, we focus upon the meaning of “insurance” in the context of the regulatory jurisdiction of the State Corporation Commission and its Bureau of Insurance. The term is not defined in the Code of Virginia, but we have said that a “shifting of the risk is the essence of insurance.” Hilb, Rogal and Hamilton Co. v. DePew, 247 Va. 240, 248, 440 S.E.2d 918, 923 (1994).
Here, we consider whether the Commission erred in ruling that it had no authority to regulate a product that is being offered to consumers in the title insurance market. Specifically, the dispositive question is whether the product, called “Title Option Plus” (TOP), involves a shifting of the risk of title defects, thus constituting insurance subject to Commission regulation.
In 1995, the Commission issued a rule to show cause against appellees Norwest Corporation, Norwest Mortgage, Inc., and American Land Title Company, Inc. The Commission alleged defendants were violating Code § 38.2-1024 by offering TOP and thereby transacting the business of title insurance in the Commonwealth without first obtaining a license from the Commission. The rule was issued after a Bureau of Insurance investigation was undertaken in response to a complaint made by appellant Lawyers Title Insurance Corporation. Lawyers Title was permitted to participate in the proceeding as a party complainant.
Subsequently, a Commission examiner conducted a hearing and issued a report. He found against the defendants and recommended that the Commission take punitive action against them.
Later, the Commission considered the hearing examiner’s report, the evidence of record, and argument of counsel. In a 1996 Final Order and Opinion, the Commission unanimously determined “that TOP is not insurance under the current state of the law in Virginia.” Consequently, the Commission dismissed the rule to show cause. This appeal ensued.
Upon review of a Commission’s final order, we do not consider the matter de novo. On appeal, the Commission’s findings “are presumed to be just, reasonable, and correct.” Swiss Re Life Co. Am. v. Gross, 253 Va. 139, 144, 479 S.E.2d 857, 860 (1997). The Commission’s order is entitled to the respect due judgments of a tribunal *391 informed by experience, and its decision will not be disturbed when “based upon the application of correct principles of law.” Id.
The facts are virtually undisputed. Norwest Corporation is a bank holding company and the parent of the other two defendants. Norwest Mortgage originates first mortgage loans and sells most of them in the “secondary market” to entities such as the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Association (Freddie Mac), and the Government National Mortgage Association (Ginnie Mae). American Land Title, operating under the trade name “ATI Title Company,” is a title insurance agency licensed in Virginia and performs searches of titles to real property in this state.
In 1992, Norwest Mortgage and American Land Title began to develop TOP. TOP is a “process” by which Norwest Mortgage determines the record status of title to real property in order to decide whether to make a mortgage loan. The concept grew out of precedent in the second mortgage loan industry in which certain mortgage lenders relied on a record title search and report, not title insurance, to determine whether to make a mortgage loan. Norwest Mortgage began offering the product to Virginia borrowers in March 1994.
TOP is available only on Norwest Mortgage loans secured by first deeds of trust on existing residential property. TOP is not available on loans for new construction, commercial property, or leaseholds because “the risks are higher on that type of property,” according to the testimony.
Under the process, if a borrower elects to have TOP apply, American Land Title prepares a “Title Condition Report.” This Report is not a guarantee of title. It is American Land Title’s representation to Norwest Mortgage that the information provided, including a list of liens and other encumbrances, is based upon a search of the public land records. The Report states it “does not insure or commit to insure title or the validity, priority or enforceability of the Lender’s lien, and is not intended to be relied upon as a legal opinion as to the lien status.”
Norwest Mortgage charges the borrower a fee for obtaining such a report. Generally, the TOP fee is 10% less than the premium on a traditional lender’s title insurance policy. If the Report reveals no title defects in the property offered to secure the loan, and the borrower meets other requirements to qualify for a loan, Norwest Mort *392 gage will approve the loan without requiring the borrower to purchase a lender’s title insurance policy.
In Virginia, Norwest Mortgage’s loan is secured by a deed of trust, which conveys legal title to the property to a trustee who holds such title in favor of Norwest Mortgage as security for the loan. Under the terms of the deed of trust, the borrower represents to Norwest Mortgage that the borrower “is lawfully seised” of the property and has the right to convey it, that the property is unencumbered, except for encumbrances of record, and that the borrower “will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.” These deed of trust representations are made by the borrower whether or not the borrower has elected to have TOP apply to the transaction.
As we have said, Norwest Mortgage sells its first mortgage loans, including TOP loans, on the “secondary market,” primarily to Freddie Mac, Fannie Mae, and Ginnie Mae. Freddie Mac and Fannie Mae will accept TOP in lieu of lender’s title insurance or an attorney’s title opinion. In return, Norwest Mortgage agrees to cure any title defect in the loan secured by the deed of trust or to repurchase the loan from these secondary purchasers. Norwest Corporation further guarantees Norwest Mortgage’s performance. Ginnie Mae accepts TOP on Norwest Mortgage loans, but does not require the additional guarantee from the parent corporation.
In its Final Order and Opinion, the Commission focused on the time “when the TOP transaction occurs” between the borrower and the lender, and not on the time when Norwest Mortgage sells the loan. It found that “TOP does not involve the shifting of risk that is essential to the creation of insurance.” It stated that Norwest Mortgage, “like any lender, incurs a risk that the priority of its lien is not what it believed it to be when the loan was made. [Norwest Mortgage] creates and bears that risk itself by virtue of its decision to make the loan. When lender’s title insurance is purchased, . . . (the lender) transfers its risk to the title insurance company. But where TOP is involved, [Norwest Mortgage] retains the title risk.” We agree with the Commission’s analysis.
When Norwest Mortgage makes a loan, it is a mortgage loan secured by a lien interest in the realty. At that point in time, Norwest Mortgage incurs a title risk that the loan is not properly secured or that its lien is not first in priority. Then, Norwest Mortgage sells that mortgage loan into the secondary market. At that point, Norwest *393 Mortgage makes a warranty and representation to the secondary market purchaser that the loan is a first mortgage loan.
From the time of making the loan to the selling of the loan, and thereafter for the life of the loan, the risk always is upon Norwest Mortgage. It bears the risk that the borrower’s representations, made in the covenants of the deed of trust, are not correct. Parenthetically, if any of the borrower’s covenants are false, then the lender’s lien interest in the realty securing the loan may be in jeopardy, and the borrower is at risk of a claim by the lender. TOP does not remove this risk from the borrower. Finally, when the loan is sold on the secondary market, Norwest Mortgage bears the risk that its representations and warranties are not correct. Accordingly, throughout the entire transaction, there is a retention of the risk by Norwest Mortgage, and not a shift of the risk.
The Commission referred to its own administrative precedents and found them “both persuasive and consistent with” the view of this Court that a shifting of the risk is the essence of insurance. For example, the Commission noted Administrative Letter 1982-10 issued by the Bureau of Insurance drawing a distinction between risk retention and risk transfer with regard to extended warranty service plans offered by automobile manufacturers or dealers, on the one hand, and those offered by third parties, on the other. The Bureau had opined that such contracts “are policies of mechanical breakdown insurance if offered by [an entity] other than the manufacturer or seller of the covered motor vehicle,” but such contracts offered by the manufacturer or seller are “more in the nature of warranties than of insurance.” The Bureau said: “The primary risk of loss under such contracts must remain with and be borne by the manufacturer or seller, or the contract will be deemed to be an insurance policy.”
Finally, the Commission addressed the “warranty” issue in depth. The defendants argued to the examiner that Norwest Mortgage’s contractual obligations under TOP are in the nature of warranties, not insurance. Thus, defendants argued, because the Commission does not regulate warranties, a license to provide TOP. in Virginia is not required.
Agreeing with defendants, the Commission rejected the hearing examiner’s analysis, embraced on appeal by Lawyers Title, based on the nature of warranties for manufactured products. The hearing examiner said that if a so-called warranty “protects the purchaser from losses caused by perils unrelated to the manufacture of the product and outside the seller’s control, the promise to indemnify is *394 more in the nature of insurance” and is not a warranty. The examiner noted that Norwest Mortgage “assumes the risk of both on- and off-record title defects by guaranteeing [a Norwest] mortgage has first lien status.” However, according to the examiner, “any losses resulting from a title defect, particularly off-record defects, are unrelated to any defect or failure in the loan, ... the so-called ‘product,’ sold by [Norwest Mortgage]. Rather, the title defects relate to the collateral securing the loan” and not “the loan itself.” The examiner decided that because these off-record defects, such as recording errors and forgeries, could not be under the defendants’ control, TOP cannot be a warranty and must instead be insurance. We agree with the Commission that this analysis is flawed.
In the context of this discussion, a warranty relates to the character or efficiency of the product sold, and would not cover a hazard wholly unrelated to the quality of the product. See Ollendorff Watch Co. v. Pink, 17 N.E.2d 676, 677 (N.Y. 1938). As the defendants argue, the representation and warranty by Norwest Mortgage that its loan is secured by a first lien is a representation relating to the character and quality of the loan, the “product.” The status of the lien securing the loan is being warranted. This lien status is as integral to the character and quality of the loan as the rate of interest and duration of the loan. For example, a loan secured by a second or third lien lacks the character and quality of a loan secured by a first lien.
And, the fact that Norwest Mortgage’s warranties require indemnification for off-record title defects that are beyond its control does not mean they are not true warranties. Any after-discovered defect affecting the status or priority of the lien necessarily affects the character and quality of the loan, whether the defect results from a negligent title search by American Land Title or from an off-record problem not discoverable by a diligent title examiner. The fact that Norwest Mortgage has no “control” over these off-record defects does not mean that Norwest Mortgage has warranted a condition unrelated to the quality of the loan product sold on the secondary market. A deficient lien is a defect in the product sold by Norwest Mortgage, whatever its cause, and its contractual undertaking with regard to such a defect is a warranty, and not insurance.
In sum, we agree with the Commission’s rejection of the notion “that if a product looks like insurance, and is sold like insurance, it must be insurance.” Hence, we hold that Lawyers Title has failed to *395 overcome the presumption of correctness of the Commission’s final order, and it will be

Affirmed.