**Roger PHELPS, Plaintiff,**

v.

**ROBERT WOODALL CHEVROLET, INC., Defendant.**

**No. 4:03cv00045.**

United States District Court,
W.D. Virginia,
Danville Division.

Aug. 18, 2003.

Elmer Woodard, Danville, VA, for Plaintiff.

Bryan Grimes Creasy, Clark H. Worthy, Johnson, Ayers & Matthews, Roanoke, VA, for Defendant.

## MEMORANDUM OPINION

KISER, Senior District Judge.

In this case, plaintiff Roger Phelps alleges that defendant Robert Woodall Chevrolet, Inc. ("Woodall") violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, in connection with the purchase of an automobile. The defendant has moved for summary judgment. The parties have fully briefed the issues and appeared before me on August 14, 2003 for oral argument. The matter is therefore ripe for decision. For the reasons stated below, the defendant's motion will be denied.

---

1. As explained below, due to the introduction of this material outside the pleadings, the

## BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are largely undisputed. On October 22, 2002, Phelps entered into an agreement to purchase a 2000 model Chrysler LHS from the defendant. The Buyer's Order, attached to the Complaint as Exhibit A, lists the cash price of the car as $19,995.00. The corresponding sales tax was listed as $612.81. Also listed on the Buyer's Order was a line item for "Automotive Theft Protection" ("ATP") with a corresponding charge of $283.00.

The document explaining the ATP, attached as Exhibit B to the defendant's motion to dismiss,[1] indicates that the ATP is a contract with a third party, A Touch of Class, Inc. ("ATOC"). The plaintiff selected the "Basic Protection Plan," which lists a corresponding benefit of $2,500.00. The terms of the ATP are provided on the back of the document. The ATP styles itself as a limited warranty:

A TOUCH OF CLASS, INC. ("ATOC") warrants that when the AUTOMOTIVE THEFT PROTECTION Program ("ATP") is PROPERLY AND PROFESSIONALLY applied to, or installed on YOUR VEHICLE, then if ATP fails to deter the theft of YOUR VEHICLE, and if all the provisions of this LIMITED WARRANTY are satisfied, ATOC will:

A) Pay to YOU a RENTAL CAR REIMBURSEMENT ....(up to $250— Basic Protection Plan); and

\* \* \* \* \* \*

C) Under the BASIC PROTECTION PLAN, pay on YOUR behalf TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) towards YOUR

parties consented to convert the motion to dismiss into a motion for summary judgment.

purchase or lease of a REPLACE-MENT VEHICLE.

ATP at 2. The agreement also provides that, in the event of the payout, ATOC selects the dealer from whom the ATP consumer must purchase or lease the replacement vehicle.

The plaintiff's complaint is that this $283.00 plan is actually insurance against loss of property and that, as a result, Woodall incorrectly disclosed this amount to the plaintiff. Under 15 U.S.C. § 1605(c), charges or premiums for insurance against loss of or damage to the subject property are considered finance charges. Under 12 C.F.R. § 226.4(b)(8), insurance premiums in connection with a credit transaction are considered finance charges. Woodall included the $283.00 in the amount financed, not in the finance charge. Thus, the amount financed was allegedly $283.00 too high and the finance charge was $283.00 too low, resulting in an understatement of the annual percentage rate (APR). Consequently, the defendant allegedly violated TILA and the Federal Reserve's Regulation Z in 3 ways: 1) by failing to disclose accurately the finance charge, in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) and 226.4; 2) by failing to disclose accurately the APR, in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e); and 3) by failing to disclose accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b). Under 15 U.S.C. § 1640, the plaintiff would be entitled to statutory damages of twice the finance charge, plus costs and reasonable attorney's fees.

## DISCUSSION

### A. Standard of Review

The defendant brought this matter before me by filing a motion to dismiss. Attached to that motion to dismiss, however, was the ATP document, which the parties agree is the core piece of evidence in this case. At oral argument, the defendant recognized that the consideration of this document outside the pleadings would convert this motion to dismiss into a motion for summary judgment. In such a situation, Fed.R.Civ.P. 12(b) requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." The plaintiff declined this opportunity and elected to proceed with argument on summary judgment.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the jury could reasonably find for the plaintiff. Thus, I must ask "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 250, 106 S.Ct. 2505. In making this determination, I must view the facts and draw reasonable inferences in the light that is most favorable to the nonmoving party. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994); *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1129 (4th Cir.1987).

### B. Warranty vs. Insurance

■ The core question in this dispute is whether the payment mechanism contemplated by the ATP is a warranty, as the defendant argues, or a policy of insurance, as the plaintiff argues. The ATP registration form indicates that the defendant

etched the windows or windshield of the plaintiff's car with the unique identifying number "CT116502". Under the defendant's view, the ATP is a warranty that the etched number will prevent the plaintiff's car from being stolen and, if stolen, that the ATP will assist law enforcement such that the vehicle will be recovered within 30 days of the loss. The registration form consistently refers to the ATP as a "limited warranty" from A Touch of Class, Inc. The defendant makes several analogies to other products, such as car stereos with anti-theft devices or undercarriage anti-rust treatments, that come with promises that are obviously warranties rather than insurance.

 TILA is a remedial consumer protection statute that is read liberally to achieve its goals. "Courts construe TILA broadly so that it will provide protection for the consumer. Therefore, any failure to disclose information required by TILA, or TILA's Regulation Z, results in a technical violation." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F.Supp.2d 535, 547 (E.D.Va.2001). I must look to the substance of the transaction rather than the form. *Adams v. Plaza Finance Co.*, 168 F.3d 932, 935 (7th Cir.1999); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 436 (5th Cir.1998). Although the amount of money at stake in this case may seem trivial, "violations of TILA cannot be explained away as merely 'technical' and, thus, de minimis." *Jenkins v. Landmark Mortg. Corp. of Va.*, 696 F.Supp. 1089, 1095 (W.D.Va.1988) (citing *Mars v. Spartanburg Chrysler Plymouth*, 713 F.2d 65 (4th Cir.1983); *Huff v. Stewart–Gwinn Furniture Co.*, 713 F.2d 67 (4th Cir.1983)).

The plaintiff argues that, if indeed the ATP is a warranty, it must meet the terms of the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. The plaintiff asserts that the ATP fails to meet the specifications of the MMWA by failing to specify its promises concerning the material or workmanship of the product; by failing to specify an applicable time period; by failing to offer to repair, refund, or replace such product if it fails to meet a certain level of performance; by failing to fully and conspicuously disclose the terms of the warranty; by failing to clearly identify the warrantor; by failing to identify any tangible "thing" to which the warranty applies; by failing to list the legal remedies available to the consumer; by failing to state the characteristics or component parts of the product that are not covered by the warranty; and by conditioning the warranty on the consumer's use of an article provided without charge which is identified by brand, trade, or corporate name. The defendant responds on brief that the ATP is a warranty but that it is not implicated by the MMWA because the theft program is not tangible personal property (a "consumer product") under the meaning of the Act—a curious assertion given the defendant's simultaneous argument that the ATP is a warranty precisely because a product, the etching, is sold. Indeed, if the etching is not a consumer product, it is difficult to see what the ATP is actually guaranteeing the performance of.

 The plaintiff next argues that the ATP involves risk shifting from the plaintiff to ATOC, which is "the essence of insurance." *Lawyers Title Ins. Corp. v. Norwest Corp.*, 254 Va. 388, 390, 493 S.E.2d 114 (1997) (quoting *Hilb, Rogal & Hamilton Co. v. DePew*, 247 Va. 240, 248, 440 S.E.2d 918, 923 (1994)).[2] As the de-

**2.** Reference to state-law definitions of warranty and insurance is appropriate because the MMWA does not completely preempt state regulation of consumer product warranties.

*Deadwyler v. Volkswagen of America, Inc.*, 748 F.Supp. 1146, 1150 (W.D.N.C.1990) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1006 (D.C.Cir.1986)).

fendant points out, though, the *Lawyers Title* court concluded by rejecting "the notion 'that if a product looks like insurance, and is sold like insurance, it must be insurance.'" *Id.* at 394, 493 S.E.2d at 117. The *Lawyers Title* case determined that a mortgage company's representation concerning the quality of title to land constituted a warranty, not insurance, because the company bore the risk initially (as a first lien holder) and thus never shifted the risk to a third party. In fact, once the mortgage company sold the note to a third party, the company still bore the risk because it warranted the quality of the title to the third party. The defendant argues that in this case, ATOC provided the plaintiff with the etching and the warranty and therefore did not assume the plaintiff's risk of theft; rather, ATOC voluntarily created its own risk. This argument is unconvincing—unlike the mortgage company in *Lawyers Title*, which had a secured interest in the property (and thus risk) independent of its representations regarding the quality of the title, A Touch of Class had no connection with the purchased automobile independent of the ATP. In other words, if the title in *Lawyers Title* contained a defect, the mortgage company would have suffered even had it not warranted the title; if Phelps's car were stolen, in contrast, ATOC would suffer no harm if it had not entered into the ATP agreement with Phelps. As it stands now, however, if Phelps's car is stolen, $2,500.00 of the risk of theft is borne by ATOC rather than Phelps.

At oral argument, counsel for the defendant represented that the etching, which is apparently rather small, is designed to deter thieves from stealing the ATP customer's vehicle by making the thieves aware that the vehicle is more easily traced than a non-ATP car. The ATP, according to counsel, consists of more than just the etched number—it includes a nationwide registry that would allow police to easily identify the vehicle and thus heighten the chances of its return. There is no information to that effect in the record, however, and I am constrained to consider only the two documents submitted in this case. The documents themselves do not indicate what the ATP does or how it accomplishes or performs its task, nor do they reveal what is warranted against, other than an ultimate outcome perpetrated by a third party. Therefore, at this stage, I have no evidence on which I could conclude that the ATP does anything beyond shifting some of the risk of theft from Phelps to ATOC.

The defendant has not met its burden of demonstrating its entitlement to summary judgment as a matter of law, and thus the defendant's motion will be denied. An appropriate order shall this day issue.

### *ORDER*

Before me is the defendant's motion for summary judgment made in open court on August 14, 2003. For the reasons stated in the accompanying memorandum opinion, the defendant's motion is **DENIED**.

The Clerk shall send a copy of this order and memorandum opinion to counsel of record.